Argued March 4, affirmed July 8, petition for rehearing
denied July 29, 1959

WEYERHAEUSER TIMBER COMPANY *v.* STATE
UNEMPLOYMENT COMPENSATION COM-
MISSION ET AL

342 P. 2d 114

*E. Nordyke*, Salem, Assistant Attorney General, argued the cause for appellant State Unemployment Compensation Commission. With him on the briefs were Robert Y. Thornton, Attorney General, Roland V. Brown and Harry G. Spencer, Assistant Attorneys General.

*Harry George, Jr.*, Portland, argued the cause and filed briefs for appellants Columbia River District Council No. 5, IWA-CIO, Local Union No. 5-40, IWA-CIO, Verlin I. Kaufman, Glen Ross, and Joseph P. Powers.

*Cleveland C. Cory*, Portland and *Roger Henselman*, Tacoma, Washington, argued the cause for respondent. With Cleveland C. Cory on the brief were Hart, Spencer, McCulloch, Rockwood and Davies, Portland.

Before McALLISTER, Chief Justice, and LUSK, WARNER, PERRY, SLOAN and CRAWFORD, Justices.

PERRY, J.

The defendants Verlin I. Kaufman, Glen Ross, and Joseph P. Powers (hereinafter referred to as "claimants") were in the employment of the Weyerhaeuser Timber Company (hereinafter referred to as "petitioner"). They were members of the defendant Union (hereinafter referred to as the "Union") and their employment was covered by a working agreement made and entered into on their behalf by the Union with the petitioner. This agreement, insofar as material, reads as follows:

"*ARTICLE IX—HOLIDAYS*

"(A) The following holidays shall be observed: Memorial Day, Fourth of July, Labor Day, Thanks-

giving Day, New Year's Day, beginning at five p.m. December 31 and ending January 1 midnight, and Christmas Day, beginning at five P.M., December 24, and ending December 25 at midnight, shall be recognized as paid holidays for qualified employees. One other holiday to be chosen by the Union shall be observed as an unpaid holiday, and work performed on such a day shall be paid for at the rate of rate and one-half. If a holiday falls on Sunday, the following Monday shall be recognized as the holiday. Holiday pay shall be eight (8) hours' pay per holiday computed at the qualified employee's regular job rate of pay for his regular work schedule. Pay for qualified piece workers shall be eight (8) hours' pay at their straight time average daily earnings for the preceding ninety (90) days. Qualified employees working on a paid holiday shall be paid an additional one and one-half times the employee's regular rate of pay for the hours worked on the shift designated as the holiday shift. An employee who has not qualified for a paid holiday shall be paid one and one-half times his regular rate of pay for hours worked on the shift designated as the holiday shift.

"(b) An employee is qualified for holiday pay if (1) he has at least thirty-one (31) days' seniority prior to the holiday, and (2) works the last regularly scheduled work day before and the first regularly scheduled work day after the paid holiday. The second qualification shall not be required in the following instances:

"(1) Where an employee is absent because of an occupational injury for which he receives workmen's compensation, or would receive such compensation except for a statutory waiting period of disqualification, he shall be qualified for holiday pay for the paid holidays which occur during the first six (6) months of absence following the date of the injury resulting in such absence.

"(2) Where an employee is absent because of a

non-occupational injury or illness and produces written evidence of such injury or illness, he shall be qualified for holiday pay for the paid holidays which occur during the first thirty (30) calendar days following the commencement of the non-occupational injury or illness resulting in such absence.

"(3) Lay-off for not more than thirty (30) days because of lack of work, or lay-off without time.limitation due to weather conditions, and when an employee is absent for either of such reasons, he shall receive pay for paid holidays occurring during such lay-off, provided, the employee returns to work upon the termination of such lay-off.

"(4) In cases of written leaves of absence of one week or less authorized by the Company for compelling reasons beyond the control of the employee, or such leaves of absence while on Union business not to exceed thirty (30) calendar days; provided, the employee returns to work immediately following such leave of absence.

"Holiday pay payable to an employee under (1) or (2) above, shall be paid to the employee on the regular payday for the period in which such holiday occurs."

The claimants each qualified for the holiday pay provided under Article IX.

The claimants were laid off by the petitioner for a period of three weeks, commencing December 21, 1956 and ending January 14, 1957. Each filed his claim for unemployment compensation benefits during this lay-off period and a deputy of the State Unemployment Compensation Commission (hereinafter referred to as the "Commission") determined the holiday pay should be considered wages for both Christmas Day and New

Year's Day. Therefore, each claimant was awarded unemployment compensation benefits in each week in amounts determined by deducting from his weekly benefit the amount by which his holiday pay exceeded one-third of his unemployment benefit.

The claimants filed their requests for a hearing before the Appeals Referee. At this hearing, the same issue of law being involved with other employes as to their respective employers, these claims of other claimants similarly situated were consolidated.

The Appeals Referee affirmed the decision of the deputy of the Commission and the claimants appealed to the Commission. The petitioner did not appear nor participate in the proceedings before the Appeals Referee or the Commission.

The Commission on review set aside and reversed the decision of the Referee and ordered that the claimants be paid their unemployment compensation benefits without consideration of the holiday pay for Christmas and New Year's. Thereupon petitioner filed its petition for a judicial review of the Commission's decision in the Circuit Court of the State of Oregon for Clackamas County.

The circuit court reversed the decision of the Commission, which in effect reinstated the decision of the Appeals Referee, and from this decision the defendants have appealed.

The claimants contend the trial court was without jurisdiction to review the decision of the Commission, (1) because the petitioner had not exhausted its administrative remedies as provided in ORS 657.265 to 657.275, and (2) that the petitioner failed to allege its petition was filed within the time required by statute.

The petitioner had exhausted its remedies.

While it is true petitioner made no personal appearance at the hearing before the Referee or the Commission, it was a party to the proceedings had and was, as a contributor to the fund, bound thereby. After the hearing before the Commission, there are no further administrative steps required since an application for reconsideration before the Commission (ORS 657.290) is but an optional right, and is not a necessary step by an aggrieved party seeking judicial review. ORS 657.285(1).

■ The individual claimant's contention, that the petition does not show on its face that the trial court had jurisdiction to review the proceedings before the Commission, is based upon the allegation in the petition that "Petitioner had been advised that a copy of the decision of the defendant Commission was mailed to petitioner on November 12, 1957." It being claimants' contention that this is not a sufficient allegation of fact to disclose that the Commission's order was final. If this allegation is insufficient, the Commission by answer supplied this defect by admitting the date of mailing.

The claimants also contend the trial court was without jurisdiction because the petitioner failed to name all of the parties who were present at the hearing before the referee and at the review of such claims before the Commission as defendants in its petition. There is no merit in this contention.

The basis of this contention lies in the fact that employes of other timber processors, operating under practically identical contracts, had filed for unemployment compensation, and the Referee and Commission for convenience thereupon consolidated all these cases for hearing; the Commission making findings of fact

and conclusions of law applicable to all the parties. The portion of ORS 657.285(2) relied upon by claimants as applicable is as follows:

"Within 20 days after the decision of the commission has become final, any party aggrieved thereby may secure judicial review thereof by commencing an action in the circuit court of the district of which the county in which the claim was filed is a part. In such action, any other party to the hearing before the referee, or the review of such claim before the commission, shall be made a defendant."

■ There is no question but that compliance with this portion of the Act is necessary to the jurisdiction of a circuit court to review the actions of the Commission. However, we cannot construe the terms "party to the hearing" as including all who are present at a hearing where for the sake of convenience and because of similarity of issues the individual controversies between one employer and his employes and the controversies between another employer and his employes are heard and adjudicated. Just a reading of the Act discloses that the Act contemplates the allowance of benefits which accrue thereunder by reason of an employe-employer relationship. Therefore, the "parties to the hearing" as contemplated by the statute are those between a particular employer and his own employes.

The principal contention of the claimants and the Commission is that the trial court erred in its interpretation of the Act when it held that the remuneration received by the claimants as holiday pay for Christmas Day, 1956 and New Year's Day, 1957, in accordance with the contract of the parties, should be considered as wages or remuneration for services performed during those weeks in determining their unemployment benefits.

The defendants' contentions are, first, since no productive services were performed for petitioner during the weeks in question, the holiday pay received or to be received could not be considered as payment for services; and, second, if it be considered that claimants did perform services for petitioner during these periods, the pay received was a wage or remuneration relating to other days when productive services were actually performed.

The answers to the questions posed are to be found in the contract of the parties and in the Oregon Unemployment Compensation Act. The over-all purpose of the Act is beneficent in nature.

The legislature has defined who is to be deemed by the Commission as an "employed person" in the following manner, ORS 657.030:

> "As used in this chapter, unless the context requires otherwise, and subject to ORS 657.035 to 657.090, 'employment' means service for an employer, including service in interstate commerce within the United States, performed for remuneration or under any contract of hire, written or oral, express or implied."

ORS 657.100, of the Unemployment Compensation Act, defines the unemployed individual as follows:

> "An individual is deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him or in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The commission shall prescribe such regulations as it deems necessary with respect to the various types of unemployment."

ORS 657.105 of this Act defines "wages" as follows:

> "As used in this chapter, unless the context re-

quires otherwise, and subject to ORS 657.110 to 657.135, 'wages' means all remuneration for employment, including the cash value, as determined by the commission under its regulations, of all remuneration paid in any medium other than cash."

ORS 657.150(6) of this Act, determining the unemployment benefits, is as follows:

"An eligible individual who is employed in any week shall be paid with respect to such week a benefit in an amount equal to his weekly benefit amount less that part of the remuneration, if any, payable to him with respect to such week which is in excess of one-third of his weekly benefit amount. If the resulting amount is not a multiple of $1, it shall be computed to the nearest multiple of $1. [1955 c. 655 § 15; 1957 c. 699 § 1]"

Under ORS 657.030, a person is employed when he is to receive remuneration for his services, and under ORS 657.100 he is unemployed when he has no services to perform for another for which he is to receive remuneration.

■ The statute does not restrict the employe to productive services and it has been said the word "services" is not to be limited to "the expenditure of physical or mental effort." They are no less earned services when the employer may command the time of an employe. *Social Security Board v. Nierotko*, 327 US 358, 66 S Ct 637, 90 L ed 718.

In *Journal Pub. Co. v. State U.C. Com.*, 175 Or 627, 636, 155 P2d 570, this Court said:

"The word 'service', as counsel suggests, varies in meaning according to the context in which it is found, and it would be impracticable, in our opinion, to attempt a definition by which to test every case that may arise. In Creameries of America, Inc. v.

Industrial Commission, 98 Utah 571, 102 P(2d) 300, presently to be considered, the court said:

" 'It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed.'

"We agree with the statement in that case that the way 'service' is used in the Act 'indicates an intention on the part of the legislature to use the term in its broad general sense.' It is a broad term of description 'evidencing a legislative intent to give to the Act a broad and liberal coverage to the end that the far-reaching effects of unemployment may be alleviated.' "

The contract as entered into on behalf of the claimants clearly contemplates that, although no productive services are to be performed on the particular holidays, nevertheless, they are to be considered as employes and paid as though rendering services, for if required to render physical or mental labor on these days the contract provides they are to receive a larger rate of pay.

The claimants contend, however, they were unemployed at these dates, because they were free agents to seek employment elsewhere. There can be no question but that their physical presence was not required on these days, but this did not sever the employer-employe relationship upon which the holiday benefits are based. We can see no difference in this situation from that of an employe who, while enjoying a vacation with or without pay from his regular employer, renders services to another for remuneration during this vacation period. The relationship of employer and employe still exists as to the workman's regular employment.

In *General Motors Corp. v. Michigan Unemploy. C.*

*Com'n,* 331 Mich 303, 313, 49 NW2d 305, 309, the court, in considering whether wages were due and earned by one while on vacation, quoted the following from *In Re B. H. Gladding Co.,* D.C., 120 F 709, 710:

> " 'To attempt distinctions between wages due which are earned and wages due which are not earned, by an inquiry into the amount of work done by the wage earner, would be entirely impractical. If we disallow claims for a week's vacation, we must also disallow claims for half days when stores are closed, and for days and hours when there is nothing to do. Wages are 'earned,' * * * so long as a bona fide contract of hiring exists, and the clerk or servant continues in the master's employment and does all that he is required to do. * * * By continuing the relation of employer and employe during a dull season, the employer holds his working force in readiness for the active season. The relation of the employer and employed is as strictly a business relation as it is during the working season, and there is full legal consideration for the master's promise to pay wages during this period.' "

In the above case, the court had before it almost the identical question involved in this matter. The claimants were "full time hourly" employes. The company closed for the purpose of taking inventory during Christmas week. Under their employer's union contract, the claimants were entitled to be paid regular wages for Christmas Day although performing no labors, and if their actual labor was required they were to receive additional remuneration. During this layoff they sought compensation. The question presented was the same as here. Did claimants earn remuneration with respect to Christmas week? The Michigan statute on unemployment in its material part is identical with the statute of this state. An individual shall be deemed "unemployed" with respect to any week during which

he performs no services and with respect to which no remuneration is payable to him. The court reached the conclusion that the claimants did earn and receive compensation for Christmas week.

To the same effect see: *Joseph Di Micele et al., v. General Motors*, 51 NJ Super. 167, 143 A2d 799; *Stanley T. Draus v. Board of Review*, 13 NJ Super 231, 80 A2d 316; *In the Matter of the Employees of Weyerhaeuser Timber Co.,* —— Wash ——, 332 P2d 947; *Erickson v. General Motors Corporation*, 177 Kan 90, 276 P2d 376.

■ The claimants were to be paid if they remained as employes of the petitioner after the layoff period. We are, therefore, of the opinion that "services" for an employer must, under the statute, be considered in their broad sense to cover the entire employer-employe relationship while it exists without definite termination, and that in its broad meaning the statute encompasses an agreement to pay for services whether productive services are demanded or not.

■■ The claimants' second contention is that, even though they were employes of the petitioner and as such were entitled to wages for holidays under the contract of employment, nevertheless, the wages earned cannot be considered as earned in the weeks in which the respective holidays fell.

The basis of this contention is that payment for the holidays should be considered as a bonus or incentive payment. This because the employe to be eligible must return to work on the first regularly scheduled work day after the paid holiday, and, therefore, since no money is actually earned until the employe returns, the money paid is not for services rendered for that day, but is in consideration of services rendered and services to be rendered in the future.

The difficulty with this argument is the claimants, through their bargaining representative, and petitioner have designated that the remuneration to be received is pay for a day certain. This is demonstrated not only by the naming of the holidays, but in addition by providing the hours when they shall commence and end. For instance, the agreement reads:

"* * * New Year's Day, beginning at five p.m. December 31 and ending January 1 midnight, and Christmas Day, beginning at five P.M., December 24, and ending December 25 at midnight * * *"

Since it seems clear the services were performed under a written contract with reference to particular days and the contract provides the remuneration or wages to be paid for those services, we cannot look behind the clear wording of the contract to discover an undisclosed intent of the parties.

The claimants rely upon *Rumery v. Administrator*, 15 Conn Sup 501, 503, where the court, under a slightly different statute, said:

"* * * The phrase is 'during any week with respect to which' he has received such remuneration he is ineligible for unemployment compensation. In the present case the $19.80 was not received by the plaintiff as compensation for loss of wages for the week for which he is seeking unemployment compensation. At most it was received by him as compensation for loss of wages for the one day in that week. And if the matter is looked at realistically that compensation was not for the loss of his wages for one day. It was, in reality, a sort of bonus added to his wages for the year. The employer in reality was giving him a holiday with pay in return for his services rendered before and after that holiday and not merely for services rendered during the week in which it fell."

This opinion stands alone where statutes similar to ours have been interpreted as demonstrated by the cases cited above. We cannot follow the Connecticut court for it appears from the opinion that the court did not consider whether or not services were rendered as of a particular time in accordance with the terms of the agreement of the parties, but solely on the basis of why such a provision was placed in the contract.

The defendants also rely upon decisions arising under the unemployment statutes of the state of New York: *In re Schultz*, 74 NYS2d 755; *In re Marshall*, 125 NY Supp2d 854, 282 App Div NY 531. An examination of the New York statute discloses these cases are not in point.

The judgment of the trial court is affirmed.