Argued March 6, reversed June 19, 1979

# TAYLOR, *Petitioner,*
## *v.*
# EMPLOYMENT DIVISION et al.,*Respondents.*
## (No. 78-AB 171 CA 10445, SC 25864)

597 P2d 780

Alan L. Ludwick, Eugene, argued the cause for petitioner. With him on the brief was Donald K. Armstrong, P. C., Eugene.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Gregory Parker, Assistant Attorney General, Salem.

No appearance by respondent C & J Cutting, Inc.

LENT, J.

**LENT, J.**

Plaintiff appeals from a decision of the Court of Appeals[1] that he is not entitled to unemployment benefits for a two-week period from October 23, 1977 to November 5, 1977. The Court of Appeals opinion upheld decisions by an administrator[1A] and referee of the Employment Division and an affirmance, on a 2-1 vote, by the Employment Appeals Board denying benefits. We reverse.

The decisions of the administrator, referee and Employment Appeals Board were based on almost identical grounds. The referee's findings of fact, conclusion, and decision were the most detailed:

"FINDINGS OF FACT based upon the hearing record, and entered by the referee are: (1) Claimant and his wife are the sole share holders in C & J Cutting, Inc. (2) Claimant is the president of the company which does timber cutting on a contract basis. (3) Claimant receives no salary as president, but works for wages as a timber cutter and supervisor. (4) Claimant spends approximately one day per week on corporation business, which includes consulting with the company accountant, inspecting timber land and contacting potential customers. (5) During the period in issue (October 23 through November 5, 1977) claimant made approximately eight employer contacts. (6) Four of these contacts were made in behalf of the corporation in an attempt to obtain cutting contracts. (7) Claimant is responsible for the overall operation of the business and the maintenance of corporation equipment.

"CONCLUSION: Claimant was not unemployed, nor sufficiently available for work, or actively seeking and unable to obtain suitable work during the period October 23, 1977 through November 5, 1977.

---

[1] 36 Or App 61 (1978).

[1A] We find no reference to the position of "administrator" in ORS Ch. 257, but assume it to be "an authorized representative designated by the assistant director" to initially examine claims for benefits, as provided in ORS 657.265. For clarity, we will us the term "administrator" since it is used by the Employment Division in this case.

"As president of C & J Cutting, Inc. claimant performed services for the company which were both ongoing and substantial. Claimant's services included not only the essential, routine business affairs of the company, but also a continuous concerted effort to solicit business for the corporation. During those times when claimant was seeking employment he was simultaneously engaged in selling the corporation's services.

"ORS 657.100 provides, in part:

" 'An individual is deemed "unemployed" in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount. * * *'

"In an almost identical case, *Anttonen v. Morgan,* 9 Or App 169 (1972), the Oregon Court of Appeals found that the president of a corporation, performing essential services, as claimant has, cannot be considered as unemployed even though he is not immediately compensated for those services.

"During the period in issue claimant was acting primarily as an officer of the corporation and was only secondarily a member of the labor force.

"DECISION: The administrators [sic] decision served November 4, 1977 is affirmed. Claimant is not eligible for benefits under ORS 657.100 and 657.155(1)(c) for the period October 23, 1977 through November 5, 1977."

Further elaboration on the referee's findings is helpful as background to this case. Claimant incorporated C & J Cutting, Inc., with his wife in February of 1975. Apparently the advantage of the corporation was that claimant could seek employment as a logger both individually and in his corporate capacity. He also hired other employees for the corporation.

Since the formation of the corporation, claimant worked "11 or 12 months" for companies other than C & J Cutting, Inc., and "18 to 20 months" for his own company. He at all times maintained the records and continued to look for contracts for the corporation. He

performed various services for the corporation, such as contacting potential employers, making inspections, maintaining equipment, and turning records over to an accountant for bookkeeping and payroll activities. Claimant, however, was not paid for these services he rendered to the corporation, but only as a logger-employee of the corporation when it was hired to do logging.

Prior to October 23, 1977, claimant was employed by Ira Mann Logging, Cottage Grove, Oregon, but was laid off when that company finished the job for which he was hired. He testified that during the two-week period in question, he looked for work either as an individual or as a contract cutter with his corporation, and he looked for work in the evenings because it was impossible to contact the potential customers who were working during the day. He did not receive or turn down any job offers during that two-week period.

The primary issue presented by the parties in this case is whether a shareholder and officer of a corporation who performs services for his corporation without compensation is disqualified from receiving unemployment benefits because of those uncompensated services. ORS 657.100 provides:

> "An individual is deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The assistant director shall prescribe such regulations as he deems necessary with respect to the various types of unemployment."

■ An initial question to be decided is the scope of judicial review of this administrative decision. *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979). This in turn is dependent on whether an agency's decision poses a question of law or fact, and as applied to a statutory term, whether the agency has an initial responsibility for defining it. 285 Or at 548.

■ The last sentence of ORS 657.100 apparently addresses this question: "The assistant director shall prescribe such regulations as he deems necessary with respect to the various types of unemployment." Despite the "shall prescribe" language, the sentence leaves the decision to make regulations to the discretion of the assistant director because of the phrase "as he deems necessary." The parties did not address this provision in their briefs, but in oral argument before this court claimant's counsel suggested that the "as he deems necessary" language is controlling. Defendant's counsel did not express an opinion to the contrary.

Aside from the last sentence of ORS 657.100, it is also helpful to consider the nature of the term to be defined, in this case "unemployment," to determine whether the agency has an initial responsibility for defining it. In *McPherson,* 285 Or at 549-550, we discussed the situations in which the agency is to provide such a definition:

"Distinct from such agency 'expertise' in giving meaning to a technical or specialized terminology is the question how far the statutory term entrusts to the agency some range of choice in carrying out the legislative policy. We do not regard the Employment Division as the kind of 'expert agency' that has special knowledge of the meaning of such statutory terms as 'employment,' 'direction or control,' 'independently established business,' and the like. *See Baker v. Cameron, supra; Republic Dev. Co., Inc. v. Emp. Div., supra.* In those phrases, the legislature refers to relationships that meet certain definable legal tests, though applying the tests to the facts of any given arrangement may sometimes be a close question. But the phrase 'good cause' is not that kind of a statutory term. Like standards such as 'fair' or 'unfair,' 'undue' or 'unreasonable,' or 'public convenience and necessity,' 'good cause' in its own terms calls for completing a value judgment that the legislature itself has only indicated: evaluating what are 'good' reasons for giving up one's employment and what are not. Judicial review of such evaluations, though a 'question of law,' requires a court to determine how

much the legislature has itself decided and how much it has left to be resolved by the agency. For an agency decision is not 'unlawful in substance,' ORS 183.482(8), *supra*, if the agency's elaboration of a standard like 'good cause' is within the range of its responsibility for effectuating a broadly stated statutory policy."

The term "unemployment" does not call "for completing a value judgment that the legislature itself has only indicated," and unlike "good cause" under ORS 657.176(2)(c), it is not singled out as a determination to be made by the assistant director. Further, the issue presented by this case focuses on the actual definition given to "unemployment" by the legislature in ORS 657.100, and involves questions of statutory construction including the use of the phrase "performs no services," the use of the conjunction "and" between that phrase and the phrase "with respect to which no wages are payable," and the relationship between the two parts of the first sentence of the statute.

█ The Court of Appeals focused on the first part of the statute and the use of the word "and" between the performance of no services and existence of payable wages. The court interpreted both phrases as requirements to be met before one can be considered "unemployed" and reasoned that "one is not unemployed unless he 'performs no services.' " The case of *Anttonen v. Morgan,* 9 Or App 169, 496 P2d 733 (1972), is cited for the proposition that "one who owns a corporation and does work on behalf of the corporation, *[sic]* performs services within the meaning of ORS 657.100, [and] is by statutory definition not unemployed and therefore is not entitled to benefits." 36 Or App at 64.

The claimant in *Anttonen* was the primary stockholder and president of a logging corporation, as well as one of its employees. During the period of time he claimed unemployment benefits he supervised the logging of his crews, acquired and maintained equipment owned and operated by the corporation, and "engaged in other activities on behalf of and to the

[717]

benefit of the corporation." 9 Or App at 171. Without deciding whether *Anttonen* was correctly decided, we believe the primary distinction from the case at hand is that in *Anttonen* the claimant was compensated for his services by the corporation.

Claimant here presents two basic arguments, one of general policy and the other of statutory construction, in favor of his position that one who performs services without compensation is not disqualified for unemployment benefits just because of the performance of services.

Claimant contends that to read the phrase "performs no services" to include uncompensated services runs contrary to the previously announced interpretation of the intent of the Unemployment Compensation Law. In *Puget Sound B. & D. Co. v. S. U. C. C.*, 168 Or 614, 620, 126 P2d 37 (1942), this court stated:

> "It is clear that this remedial legislation should be liberally construed to the end that employees receive the benefits intended and thereby effectuate the purpose of the act."

*See also, Columbia Management Co. v. Morgan,* 270 Or 109, 118, 526 P2d 571 (1974).

Also in support of this intent, claimant argues that to deny benefits because of uncompensated services performed in this situation is to discourage individuals such as claimant from actively seeking employment through all possible alternatives. Those who maintain small corporations as well as hold themselves out for work as individuals would be excluded from receiving unemployment benefits for doing any services for their corporation.

In line with the intent of this remedial legislation, claimant argues that the phrase "performs no services" should be read as meaning services rendered for compensation. Though this interpretation was not directly addressed in *Weyerhaeuser Timber Co. v. S. U. C. C. et al,* 217 Or 378, 387, 342 P2d 114 (1959), in that case the court stated:

[718]

"Under ORS 657.030, a person is employed when he is to receive remuneration for his services, and under ORS 657.100 he is unemployed when he has no *services to perform for another for which he is to receive remuneration.*" [2] (Emphasis supplied.)

ORS 657.030 defines "employment" as "service for an employer * * * performed for *remuneration* * * *." (Emphasis added.) The court must have assumed that the reference to "services" in the definition of "unemployment" in ORS 657.100 should parallel that given in ORS 657.030. It may also be that the conjunction "and" in the first part of ORS 657.100 was meant to associate "wages payable' with the "services.'

Claimant's principal argument of statutory construction is that to construe "performs no services" as done by the Court of Appeals is inconsistent with the second half of the first sentence of ORS 657.100 which states that one is unemployed "in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount." If the services which the claimant does for the corporation are uncompensated, then his zero wages are obviously less than his weekly benefit amount.

Based on this construction of the statute as a whole and the policy arguments discussed above, we find the legislature intended that the reference to services in ORS 657.100 be to services for compensation.[3]

The parties to this case actually went beyond the compensation issue in their arguments to a general

---

[2] *See also, Polk County Intermediate Educational District v. Employment Division,* 24 Or App 169, 173, 544 P2d 1073 (1976).

[3] Two California appeals court cases with similar fact situations and an almost identical statute to the one at hand also have held that the claimant should be considered "unemployed." *Cooperman v. California Unemployment Ins. App. Bd.,* 49 Cal App 3d 1, 122 Cal Rptr 127, 133 (1975); *Carlsen v. Cal. Unemployment Ins. Appeals Bd.,* 64 Cal App 3d 577, 134 Cal Rptr 581, 585-586 (1976). In *Carlsen* the court took into consideration the factors that the claimant was not working for "another" and did not receive any compensation for his services, and in *Cooperman* the court decided that the claimant was unemployed since his services were without compensation and were de minimus.

discussion of whether claimant was "self-employed,"[4] and as such should be denied benefits. The state argues that because claimant is self-employed and, due to his corporate position, makes the decision of when to work, when to lay himself off, when to get paid and how to get paid, his unemployment is not "through no fault of his own." These assertions, however, go to questions presented by ORS 657.155 concerning eligibility for benefits and ORS 657.176 concerning various reasons for disqualification from benefits, not to the question presented by ORS 657.100 in this case of whether one is unemployed when he performs uncompensated services.

Claimant urges the use of several criteria, adopted by the Washington Supreme Court in *Bartel v. Employment Security Department*, 60 Wash2d 709, 375 P2d 154, 158 (1962), for determining whether a person is self-employed, and thus not unemployed:

> "(1) Availability of applicant for resumption of regular employment;
> "(2) Hours per week devoted to activity in question;
> "(3) Net income earned from such activities;
> "(4) Nature of regular employment;
> "(5) Does the applicant engage in the same activities in the course of his regular employment, and, if so, to what extent?"

Not only is it unnecessary to address these criteria since we find that claimant's uncompensated services do not deny him unemployment status, but these criteria seem to mix the decisions to be made under ORS 657.100 and ORS 657.155(1)(c), discussed *infra* at footnote 5.

■ The decisions of the administrator, referee and Employment Appeals Board also refer to ORS

---

[4] No statute, regulation or case is cited by the parties as to the significance of the term "self-employed" in this case. We assume that the term is merely descriptive and being used by the parties consistent with their other arguments on whether performing uncompensated services for one's own corporation means that one is not "unemployed."

657.155(1)(c) in determining that claimant is not eligible for benefits. ORS 657.155(1)(c) provides:

"(1) An unemployed individual shall be eligible to receive benefits with respect to any week only if the assistant director finds that:

"* * * * *.

"(c) He is able to work, is available for work, and is actively seeking and unable to obtain suitable work. * * *"

As stated above, the referee's conclusion was not only that claimant was not unemployed, but that claimant was not "sufficiently available for work, or actively seeking and unable to obtain suitable work during the period October 23, 1977 through November 5, 1977."

It is not at all clear how this conclusion is reached. The findings of fact, *supra*, do not address the issues of whether claimant is "available for work, and is actively seeking and unable to obtain suitable work," except perhaps findings (4), (5) and (6). The only possible basis, though, for the referee's conclusions appears to be claimant's work for the corporation, as the referee concluded:

"As President of C & J Cutting, Inc. claimant performed services for the company which were both ongoing and substantial. Claimant's services included not only the essential, routine business affairs of the company, but also a continuous concerted effort to solicit business for the corporation. During those times when claimant was seeking employment he was simultaneously engaged in selling the corporation's services."

The administrator in his decision was even more explicit in deciding that claimant should be denied benefits under ORS 657.100 and ORS 657.155(1)(c) because of the corporate work, stating as reasons that the claimant has ultimate responsibility for the corporation's affairs, that "without the claimant's services the corp. would not operate at all" and that "[t]he services the claimant performs are vital to the effective operation of the corporation."

[721]

This denial of benefits under ORS 657.155(1)(c) for the same reason that claimant was deemed not unemployed under ORS 657.100, because of the performance of services, is incorrect. Not only does the performance of services alone not mean one is not unemployed, but such performance alone does not mean one is not available for or looking for work. In addition, the determination of eligibility under ORS 657.155(1)(c) is different from the determination of "unemployment" under ORS 657.100. [5]

The decision of the Court of Appeals is reversed.

---

[5] This confusion between the two statutes and the improper merging of the "fault concept with the unemployment requirement" was also recognized in *Carlsen, supra* 64 Cal App3d at 584-585, 134 Cal Rptr at 585.

The referee here may have included the reference to ORS 657.155 (1)(c) solely as boiler plate language for denial of benefits. Ex. 6, a form notifying claimant of the time, date and issues of the hearing with the referee, lumps the two statutes together as a single issue among the possible issues to be considered at the hearing.

To add to the confusion over the issue, the state at no point mentioned ORS 675.155(1)(c) in its brief to the Court of Appeals, that court did not mention the statute, and the statute was not raised before us by the petition for review or in oral argument. As mentioned above, the state in its brief did address factors relevant to ORS 657.155 (1)(c) in asserting that plaintiff was self-employed. That, however, was with reference to its argument on ORS 657.100 that plaintiff was not unemployed, and further suggests some confusion on the part of the state as to which criteria are to be used for determining unemployment under ORS 657.100 and eligibility for benefits under ORS 657.155(1)(c).