Argued and submitted June 13, affirmed in part;
reversed in part and remanded July 28,
reconsideration denied November 20, 1980 (290 Or 157),
reconsideration granted; the application for attorney
fees is denied (51 Or App 307, 625 P2d 668) March 23,
reconsideration of denial of attorney fees denied June 4,
petition for review allowed June 30, 1981

## COOK,
### *Petitioner,*
*v.*
## EMPLOYMENT DIVISION
### *Respondent.*

## (No. 79-AB-907, CA 16099)

614 P2d 1193

David L. Slansky, Oregon Legal Services Corporation, McMinnville, argued the cause and filed the brief for petitioner.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P.J.

## GILLETTE, P. J.

Petitioner appeals from an order of the Employment Appeals Board (Board) finding him ineligible for benefits under ORS 657.100 and 657.155 and liable to repay benefits overpaid to him in the amount of $2,261. ORS 657.310.[1] Petitioner was also disqualified from receiving benefits for a period of 26 weeks pursuant to ORS 657.215[2] for wilful failure to report a material fact in order to obtain unemployment benefits. We affirm in part and reverse in part.

Petitioner has been a logger for the past nine years. From December 17, 1978, through April 28, 1979, which is the usual winter layoff period in petitioner's line of work, he applied for and received unemployment benefits in the amount of $119 per week.

---

[1] ORS 657.310 provides:

"(1) Any person who makes, or causes to be made, a false statement or representation of, or fails to disclose, a material fact, and as a result thereof has received any amount as benefits under this chapter to which he was not entitled shall, irrespective of his knowledge or intent, if the existence of such nondisclosure or misrepresentation has been found in connection with a decision which was made and has become final pursuant to this chapter, be liable to repay such amount to the assistant director for the fund or to have such amount deducted from any future benefits payable to him under this chapter.

"(2) No decision shall be construed to authorize the recovery of the amount of any benefits paid to a claimant unless such decision specifies that the claimant is liable to repay the same to the fund by reason of the nondisclosure or misrepresentation of a material fact, the nature of such nondisclosure or misrepresentation, and the week or weeks for which such benefits were paid, nor until such decision has become final.

"(3) In any case in which a claimant is liable to repay to the assistant director any amount for the fund, such amount shall be collectible without interest by civil action brought in the name of the assistant director."

[2] ORS 657.215 provides, in part, that,

"An individual is disqualified for benefits for a period not to exceed 26 weeks whenever the assistant director finds that he has wilfully made a false statement or misrepresentation or wilfully failed to report a material fact to obtain any benefits under this chapter. The length of such period of disqualification and the time when such period begins shall be determined by the assistant director in his discretion, according to the circumstances in each case. "

[439]

None of the claim cards for any of these weeks bear entries of earnings or work. Pursuant to an investigation, the Employment Division found that petitioner had been engaged in the sale of firewood, fence posts and rails and concluded that he was not unemployed during the period in question. The referee and the Board affirmed that decision.

Petitioner raises a number of assignments of error on appeal. Initially, he contends that, when applying the penalty provisions of ORS 657.215 and 657.310(1), *supra,* and making a determination that a claimant has wilfully failed to report a material fact in order to obtain benefits, the Division is bound to establish its case by "clear and convincing evidence." Secondly, petitioner argues that, even when measured by the lower standard of proof of "preponderance of the evidence," the Board's order is not supported by substantial evidence.[3] Alternatively, he argues that, at most, he was ineligible for benefits for a period of three weeks and not for the entire time he was on unemployment. Finally, petitioner maintains that the Division is obligated to provide its staff and the Board with guidelines in applying the discretionary provisions of ORS 657.215, *supra.*

On appeal, the Division concedes that there is no evidence in the record to support a finding that petitioner was ineligible for benefits for *each* week between December 17, 1978 and April 28, 1979. It does maintain, however, that petitioner was ineligible for a period of three weeks and is liable to repay benefits in the amount of $357. For some reason unknown to us, the Division's brief fails to address petitioner's other assignments of error.

---

[3] Taking petitioner's first two assignments of error together, he seems to argue that the Division must prove its entire case against petitioner, both the allegation that he was not unemployed and that he wilfully failed to report a material fact in order to obtain benefits, by clear and convincing evidence. Reading the first assignment alone, it seems that petitioner would require the higher burden of proof only when proving that a claimant wilfully failed to report a material fact.

■■   Our scope of review is defined by the Administrative Procedure Act. ORS 657.282; *McPherson v. Employment Division,* 285 Or 541, 545, 591 P2d 1381 (1979). We are to determine whether the Board's findings are supported by substantial evidence in the record. ORS 183.482(8)(c). Substantial evidence is "any reasonable evidence or such proof as a reasonable mind would employ to support a conclusion." *Wilton v. Employment Division,* 26 Or App 549, 551, 553 P2d 1071 (1976). We think that definition adequately establishes that the burden of proof in these cases is by a preponderance of the evidence, and not by some higher standard.

We turn now to the question of the sufficiency of the evidence. In this case, the Board found, in part, that:

"* * * (5) The claimant has worked nine seasons as a logger for Mitchell Brothers Logging out of Yamhill, Oregon. (6) Because of his contacts through work and familiarity with the area, the claimant has access to moderate amounts of usable waste wood from cut-over land. (7) Claimant made a sale of firewood to a resident in McMinnville and also sold firewood to a retail firewood outlet in Aloha, Oregon, and made further sales to another retail outlet in Cornelius, Oregon. (8) During these transactions, claimant acted both by himself and with his son. (9) The claimant received some of the funds from these sales and shared other funds from these sales with his son.

"Conclusions:

"(A)   Clearly, the claimant was not unemployed during the weeks in issue. He spent time cutting and delivering firewood and fenceposts and made various retail sales of those items. Although he contends that he is merely making deliveries for his son, we do not find this to be the case. The claimant held himself out as the supplier of these items. Some of the monies from these sales went solely to him while other funds were shared with his son. The evidence is, however, conclusive that the claimant was self-employed in the

cutting and selling of these items. He can, therefore, not meet the requirements of ORS 657.155 as he was not unemployed during the weeks in issue.

"(B)   We also find the claimant subject to a disqualification for a period not to exceed 26 weeks as he wilfully failed to report a material fact in order to obtain unemployment benefits. The fact that the claimant wilfully failed to report was the fact that he was cutting and selling wood and receiving monies."

The crucial question is whether the Board's finding that petitioner engaged in the cutting and delivery of firewood and fenceposts and received compensation for his labor is supported by the evidence.[4] The evidence is as follows:

Acting on an anonymous tip, a Division employee investigated the allegation that petitioner was engaged in the cutting and sale of wood while drawing unemployment benefits. The investigation established that petitioner had sold firewood to a private individual, Bonnie Daoust, sometime in the second half of December, 1978, and to two companies, the Wood Yard and the Bark Barn, in March and April, 1979. It also disclosed that petitioner had placed an ad in a local newspaper to sell firewood. Petitioner testified that the sales to the two companies were made solely on his son's behalf.[5] He stated that as he came off his logging jobs he hauled wood to either his ex-wife's house or his parents' house for his son to chop up. His son split between eight to ten cords of wood, beginning in the

[4] ORS 657.100 defines unemployment:

"An individual is deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount."

Only an unemployed individual is eligible to receive unemployment benefits.

[5] The sale to Bonnie Daoust is no longer in issue. This sale, which petitioner testifies was a favor to his ex-wife's friend, was only for $50. The date of the sale was never definitely established but, even if it took place while petitioner was on unemployment, it would not have rendered him ineligible to receive benefits. The respondent concedes this point.

fall and ending sometime around March. He described his 14 year old son as having a good build and being 5' 9" tall and weighing about 150 pounds. Petitioner arranged the sales for his son, helped him load the truck and made the deliveries for him; petitioner's son does not have a driver's license. Petitioner claims, however, that his son split all the wood himself and received all the money from the various sales, except what he paid petitioner for gas.

A number of checks were introduced into evidence. These represent sales to the Wood Yard during the period of time from March 20 through April 4. Eight sales are represented for a total amount of $994.41. The manager of the Wood Yard testified that he bought wood from the petitioner on the days these checks were issued. As was his practice, the manager did not ask who owned the wood but only to whom he should make out the checks. All of the checks were made out to either petitioner's son, Bill Cook, Jr., or petitioner's mother, Ione Cook. Petitioner admitted that he cashed some of the checks for his son but stated that he never received any of the money.

The owner of the Bark Barn testified that he bought two loads of wood from the petitioner sometime around April 21st. He stated that at that time petitioner and another man came into his yard, each with their own truck load of wood. He testified that he paid the petitioner $225 in cash for both loads and never asked who the wood belonged to. Petitioner verified this sale and stated that he gave $125 to his companion for his load and took $100 back to his son.

The Board found that the petitioner was not unemployed during the period of time he was receiving unemployment benefits. On appeal, the state concedes that this finding can only be applied to three weeks.[6] A

---

[6] The three weeks under dispute are identified by the petitioner in his brief; the state does not dispute the matter. The three weeks are March 18-24, and April 1-7, during which time petitioner made deliveries to the Wood

person is not unemployed when he performs services for compensation. ORS 657.100. *Taylor v. Employment Divison,* 286 Or 711, 719, 597 P2d 780 (1979).

> "Having previously determined that the claimant was entitled to receive unemployment benefits, and having paid such benefits to claimant, the Division now has the burden of proving that claimant was not entitled to those already paid to him." *Nichols v. Employment Division,* 24 Or App 195, 198, 544 P2d 1068 (1976).

■ Although the findings and evidence could have been more specific, there is some evidence from which the Board could conclude that petitioner was not unemployed during the three weeks in question. There is evidence that petitioner worked at least part-time, *i.e.,* making deliveries, during each of the weeks. Petitioner received checks and/or cash from each delivery. Although the checks were made out to his son and the Board found that petitioner's son did receive some of the money, the Board could infer from the evidence that petitioner had control of the money. The Board obviously disbelieved petitioner's claim that his son received all the money. There was substantial evidence to support the Board's holding.

■ We turn now to petitioner's last asignment of error. As petitioner correctly points out, our recent decision in *Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979), held that the Employment Division must define certain terms for whose enforcement it is responsible under *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), in

---

Yard evidenced by checks made out to his son, some of which petitioner admits cashing, and April 15-21 when the cash sale to the Bark Barn was made. Sales were also made to the Wood Yard during the week of March 25-31, but the checks for these deliveries were made out to Ione Cook. Petitioner does not include this week as one of the possible weeks of ineligibility. The amount of money received during these three weeks would come to $283.65 for the week in March (the check made out to Ione Cook dated March 20 is not included), $133 for the April 4th sale, and $225 for the April 21st sale, of which petitioner claims his son's share was only $100.

formal rules. These rules must be reasonably specific. *Id.,* at 501. *See also Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973); *McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977). Under ORS 657.215, *supra,* the Division has the discretion to impose the full disqualification penalty of 26 weeks or a lesser period of disqualification when the Division finds that an individual has wilfully failed to report a material fact in order to obtain unemployment benefits. Petitioner claims that the Division is obligated to issue guidelines for its staff and the Board to follow when determining the appropriate length of disqualification. We disagree. Unlike the situation in *Oliver, supra,* we are not dealing with the definition of a specific term that is to be applied uniformly. Rather, we are dealing with a discretionary decision that may be made on the facts of each individual case. ORS 657.215 specifically provides that both the date of commencement and the extent of the period of disqualification are decisions that are to be made by the assistant director in *his discretion according to the circumstances of each case.* Specific rules could simply not account for the many variables involved in each case.

The decision in this case was made on the basis of the facts as originally found, *viz.,* that petitioner was not unemployed during the entire period during which he received unemployment benefits. Since on appeal the Division has conceded that petitioner was ineligible for benefits during only three of the weeks in question, it is appropriate to remand the case for the agency to determine whether, under the facts as they are now established, a penalty is still appropriate. *See Palen v. State Bd. of Higher Education,* 18 Or App 442, 463, 525 P2d 1047 (1974).

Affirmed in part; reversed in part and remanded.