Argued and submitted March 17, affirmed May 28, 1997

In the Matter of the Compensation of
Rosendo M. Valencia, Claimant.

## SAIF CORPORATION
and Young & Morgan Lumber, Inc.,
*Petitioners,*

*v.*

Rosendo M. VALENCIA,
*Respondent.*

(95-08087; CA A92897)

939 P2d 623

Julene M. Quinn argued the cause and filed the brief for petitioners.

Max Rae argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

Landau, J., dissenting.

**LEESON, J.**

SAIF seeks review of a Workers' Compensation Board order holding that claimant's right shoulder condition is a compensable consequential condition of a previously accepted left shoulder claim. We review for substantial evidence, ORS 183.482(8)(c), and affirm.

At the hearing, the issue was whether claimant's compensable left shoulder injury in 1994 was the major contributing cause of his right shoulder overuse syndrome. The only medical evidence was provided by Dr. Rand, claimant's treating physician, who expressed his opinion regarding causation in response to questions posed by claimant's attorney. Rand's opinion is reproduced below:

To: William Rand, MD

From: Max Rae, AAL, 363-5424, Fax: 363-5460

Re: Rosendo Valencia

A simple, hand written response on this sheet and faxed back to me would be sufficient. The hearing is at 9:00 tomorrow morning. My fax machine in left on at all times

Is it more probable than not that Rosendo's favoring of his left shoulder is the major contributing cause of his right shoulder problem? Is it otherwise more probable than not that the right shoulder problem was caused in major part by the work at Young and Morgan or the left shoulder injury?

Thank you for your help.

Based on Rand's opinion, the administrative law judge (ALJ) concluded that claimant had established a compensable claim and the Board affirmed.

SAIF contends that substantial evidence does not support the ALJ's finding, adopted by the Board, that Rand offered an opinion that claimant's accepted left shoulder injury was the major contributing cause of claimant's right shoulder condition. According to SAIF,

"[t]he document does not contain a response to the question posed by claimant's attorney. The markings on the document by some unidentified individual consist of underlining and circling various words. The document does not indicate agreement or disagreement with the proposition of compensability suggested by claimant's attorney in the question posed. A reasonable person could not conclude from the

document itself, or from the record as a whole, that a medical opinion sufficiently supporting compensability exists."

Claimant responds that the ALJ's interpretation of Rand's response to the inquiry made by claimant's attorney is reasonable.

As a threshold matter, we note that SAIF made no authentication objection to Rand's opinion being admitted into evidence at the hearing, and it declined the opportunity to depose or cross-examine Rand. Consequently, the only issue is whether substantial evidence supports the finding of the ALJ and the Board that claimant's right shoulder condition developed as a consequence of his left shoulder injury.

On review of an order of the Board, we are not to substitute our judgment for that of the Board as to any issue of fact or to set aside any finding that is supported by substantial evidence. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990); *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988).

Claimant's attorney posed two questions to Rand. The first asked whether it was more probable than not that claimant's favoring of his left shoulder was the major contributing cause of his right shoulder problem. The second asked whether it was more probable than not that claimant's right shoulder problem was caused in major part by his work for employer or by the left shoulder injury. The ALJ and the Board concluded that Rand's underlining and circling of words indicated his agreement with the first question posed by claimant's attorney. The ALJ characterized Rand's medical opinion as "sparse." Nonetheless, on this record, which consists of Rand's opinion and claimant's testimony, we conclude that substantial evidence supports the finding that claimant's favoring of his injured left shoulder was the major cause of the development of his right shoulder condition.

Affirmed.

**LANDAU, J.,** dissenting.

When we review for "substantial evidence," we are not required to affirm a factual finding if it is supported by *any* evidence, no matter how meager. The law requires more than that. It requires such evidence that "a reasonable mind would employ to support a conclusion." *Ruiz v. Employment*

*Division*, 83 Or App 609, 614, 733 P2d 51 (1987) (citing *Cook v. Employment Division*, 47 Or App 437, 441, 614 P2d 1193, *rev den* 290 Or 157 (1980)); *see also de St. Germain v. Employment Division*, 74 Or App 484, 488, 703 P2d 986 (1985) (substantial evidence " 'means more than "any evidence," a scintilla of evidence, or speculation' " (quoting *Cantrell v. Employment Division*, 24 Or App 215, 217, 545 P2d 143 (1976))). With that standard in mind, I find it impossible to conclude that the markings that appear on a questionnaire sent to claimant's physician, by themselves and with reference to no other testimony or evidence, constitute substantial evidence of a finding as to Dr. Rand's opinion on the issue of causation.

Claimant's attorney sent a faxed memorandum to Rand asking him to respond to two questions:

> "Is it more probable than not that [claimant's] favoring of his left shoulder is the major contributing cause of his right shoulder problem? Is it otherwise more probable than not that the right shoulder problem was caused in major part by the work at Young and Morgan or the left shoulder injury?"

Rand did not answer either question. He did not say "yes" to one and "no" to the other. He did not check either one. What he did was circle the words "not that" and the word parts "er pro." He then underlined "not that [claimant's] favo" and "cause of his right shoulder" and inserted the initials "LR" in the left margin.

Only rank speculation can make an opinion of any sort out of those markings. Certainly, it is possible that Rand intended them to mean *something*. From the markings themselves, however, it is impossible to say precisely *what* he intended them to mean. We cannot, for example, begin to tell whether the markings are intended to answer either question in the affirmative or whether the markings are instead mere indiscriminate doodles. In either event, the curious markings that appear on the attorney's questionnaire are not the sort of evidence that reasonable minds would employ to support a finding of fact, and the mere fact that the Board reached a contrary conclusion does not mean that we must do likewise.

I respectfully dissent.