Argued and submitted April 20, 1999, reversed April 12, 2000

In the Matter of the Compensation of
Dale W. Chipman, Claimant.

SAIF CORPORATION
and Department of Environmental Quality,
*Petitioners,*

*v.*

Dale W. CHIPMAN,
*Respondent.*

(97-02766; CA A100859)

997 P2d 899

Julene M. Quinn, Special Assistant Attorney General, argued the cause for petitioners. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Ralph E. Wiser III argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioners SAIF Corporation and the Oregon Department of Environmental Quality seek reversal of an order of the Workers' Compensation Board awarding benefits to claimant on the ground that his computer-related work activities were the major contributing cause of his carpal tunnel syndrome. Petitioners assert that there is not substantial evidence to support the Board's conclusion. Petitioners also make a related argument that the Board erred in finding that the symptoms of carpal tunnel syndrome are the disease and thus that a finding that claimant's work caused the symptoms satisfied the substantial evidence standard. Because the assignments of error are interrelated, we address them together. For the following reasons, we reverse.

In December 1996, claimant filed a claim for ongoing carpal tunnel syndrome in his left hand resulting from his use of a computer terminal in the course of his employment. SAIF denied that claimant's employment was the major contributing cause of his condition. A hearing was held before an ALJ, who found claimant's condition to be compensable. The ALJ's findings were adopted and affirmed by the Board without opinion. The ALJ made the following factual findings: Claimant's job entails computer input for the major part of the day, and computer keyboarding involves repetitive hand activity. Claimant's symptoms began about the time that he began his computer duties. Claimant's physician diagnosed claimant's condition as carpal tunnel syndrome. Claimant then consulted Dr. Perrin, who did not perform nerve conduction studies but diagnosed carpal tunnel syndrome in claimant's left hand based on claimant's symptomology. Ultimately, Perrin performed surgery, which resolved claimant's symptoms.

The ALJ concluded, based on the evidence in the record, that claimant met his burden of proving that his keyboarding activity was the major contributing cause of his disease. The ALJ reasoned that Perrin's reports created "an inference that the symptoms are the disease and that the work is the cause of the symptoms." SAIF argues on appeal that that finding is not supported by the medical evidence in

the record. ORS 656.802(2) provides the governing legal standard. It states, in part:

"(a) The worker must prove that employment conditions were the major contributing cause of the disease.

"* * * * *

"(d) Existence of an occupational disease or worsening of a preexisting disease must be established by medical evidence supported by objective findings."

In *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990), the court stated:

"[S]ubstantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding. ORS 183.482(8)(c). A court must evaluate the substantiality of supporting evidence by considering *all* the evidence in the record. That is, the court must evaluate evidence against the finding as well as evidence supporting it to determine whether substantial evidence exists to support that finding. If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence." (Citations and internal quotation marks omitted.)

We turn to the record to determine whether substantial evidence supports the conclusion that claimant sustained his burden of establishing by medical evidence supported by objective findings the existence of an occupational disease and his burden of establishing that employment conditions were the major contributing cause of the disease. The record in this case contains evaluations from two physicians. Perrin described claimant's symptoms, and then stated:

"Since [claimant's] history and findings were so consistent with carpal tunnel, after discussion with him, it seemed appropriate to surgically release the carpal tunnel to relieve median nerve compression. No nerve conduction studies were done. Following this surgery, he had dramatic relief of his symptoms and went on to heal the wound without problem. [Claimant] did state that his symptoms were aggravated during his work on the computer which was often 8-10 hours at a time. It is very difficult to prove that the constant finger motion with the wrist in fixed position will actually cause the symptoms of carpal tunnel to be

aggravated, but it appears to be a consistent finding. It relates to the occurrence of the nocturnal pain, where once again the wrist is relatively motionless. There are no symptoms to indicate [claimant] suffers from diabetes or thyroid deficiency, although specific studies for these conditions were not carried out by this office. To consider that he had a peripheral neuropathy consistent with late stages of these diseases does not seem appropriate in this case. [Claimant] is obviously overweight, weighing approximately 280 pounds at 6 ft. I think it would be inappropriate to assume that all obese people have carpal tunnel syndrome, there is normally no significant accumulation of fat cells within the carpal tunnel and I do not feel that this is a contributing factor to his problem."

In response to questions from claimant's attorney, Perrin further clarified:

"I stated that there was no evidence that [claimant] had symptoms of diabetes or thyroid deficiency, no evidence of peripheral neuropathy, or demonstrated the likelihood that his characteristic carpal tunnel syndrome was due to his obesity. I also did not state that it was due to his work at the keyboard, although the symptoms developed during this pattern of use and by history apparently were aggravated by it."

Finally, claimant's attorney posed the following "yes or no" question to Perrin: "Based on reasonable medical probability (as opposed to speculation or certainty) was the major contributing cause of [claimant's] carpal tunnel syndrome or need for carpal tunnel release his work at the keyboard?" Perrin did not answer "yes or no," but answered: "Keyboard work can be a contributing factor to CTS but the degree to which it is responsible is not determinate."

■ Claimant also was examined by a neurologist, Dr. Reimer, at SAIF's request. Reimer summarized claimant's medical history and, in answer to a question concerning his opinion of the major contributing cause of claimant's carpal tunnel syndrome, stated:

"First, I would like to know if he had a medical evaluation for diabetes mellitus or thyroid deficiency. If those two possibilities have been ruled out as causative factors then I would consider body habitus, fluid retention, and obesity to

be a significant and major consideration as part of a major contributing cause of carpal tunnel in this individual even though I realize that he spends a good deal of his time keyboarding. Most keyboarding is performed with the wrist in a relatively fixed position, much like one has when they [*sic*] are sleeping, driving an automobile, reading a newspaper, or holding something in their hand. A fixed position wrist does not assume that it is a causation [*sic*] for carpal tunnel syndrome."

On appeal, SAIF argues that claimant has failed to prove the existence of a compensable occupational disease. ORS 656.802(2)(a), (d). We agree with SAIF that claimant failed to meet his burden of proof and that the ALJ erred in inferring causation based on the medical reports of Perrin. The medical reports establish only that Perrin was unwilling to express an opinion about the causation of claimant's disease. Nonetheless, claimant argues that the ALJ properly inferred a nexus between the disease and the keyboarding activity on the grounds that claimant's symptoms are his disease, that his symptoms were caused by his work, and thus that no further medical evidence is required to establish compensability. The primary case relied on by claimant and the ALJ for this proposition is *Georgia-Pacific Corp. v. Warren*, 103 Or App 275, 796 P2d 1246 (1990), *rev den* 311 Or 60 (1991).

In *Georgia-Pacific*, we affirmed a Board determination that the claimant's carpal tunnel syndrome was a compensable occupational disease. In that case, two medical experts agreed that the "claimant's work with the employer was the major contributing cause of her current bilateral wrist and hand *symptoms*." *Id.* at 277 (emphasis in original). One of the physicians, however, expressed an opinion that claimant's disease was a slowing of the median nerve that was entirely idiopathic in origin, but he conceded that the condition was entirely asymptomatic until the onset of carpal tunnel syndrome. The other physician opined that claimant's employment was the cause of her carpal tunnel syndrome. *Id.* at 277-78. We stated that "sometimes the medical evidence will support the conclusion that the symptoms for which compensation is sought *are* the disease." *Id.* at 278 (emphasis in original). We went on to note that, even accepting the expert

opinion that the claimant had an asymptomatic idiopathic condition,

> "claimant seeks compensation for carpal tunnel syndrome, a complex of symptoms resulting from compression and oxygen deprivation of the median nerve in the carpal tunnel. In the opinion of [both physicians], *the syndrome was brought on by claimant's work activity with employer.*" *Id.* at 278 (emphasis added).

*Georgia-Pacific* stands for the proposition that, if medical evidence supports a conclusion that symptoms are brought on by a claimant's work activity and the symptoms are, in fact, the occupational disease for which the claimant seeks treatment, then substantial evidence could support a finding that employment conditions were the major contributing cause of the disease. Such reasoning, however, does not support the ALJ's conclusion in the present case. As emphasized above, both of the physicians in *Georgia-Pacific* held opinions that the claimant's "syndrome was brought on by claimant's work activity with employer." *Id.* The disagreement was over whether the claimant's occupational disease was carpal tunnel syndrome or a different, pre-existing condition that was asymptomatic until the claimant's work activity with the employer caused the claimant to need treatment.

Here, by comparison, neither physician expressed an opinion that claimant's carpal tunnel syndrome was brought on by claimant's work with employer. Perrin specifically "did *not* state that [claimant's carpal tunnel syndrome] was due to his work at the keyboard, although the symptoms developed during this pattern of use and by history apparently were aggravated by it." Reimer considered "body habitus, fluid retention, and obesity to be a significant and major consideration as part of a major contributing cause of carpal tunnel in this individual even though [he realized] that he spends a good deal of his time keyboarding." In short, neither physician was willing to express an opinion that claimant's symptoms were triggered by claimant's work with employer. *Compare SAIF v. Valencia*, 148 Or App 263, 939 P2d 623 (1997) (ambiguous or equivocal evidence of causation may constitute substantial evidence). Thus, even assuming that

claimant established that the symptoms of carpal tunnel syndrome are, in fact, the same as the disease, his proof still fails because no evidence in this case demonstrates the existence of an occupational disease for which claimant's work activity was the major contributing cause. ORS 656.802(2)(a), (d).

Reversed.