## 66681. GUNTHARP v. COBB COUNTY et al.

BIRDSONG, Judge.

Appellant is a former Cobb County police officer whose employment was terminated on grounds that he refused to comply with a departmental order to take a lie detector test. The Cobb County Civil Service Board upheld his termination and the superior court denied Guntharp's application for certiorari. We granted discretionary appeal.

Cobb Police Department General Order 74-6, Internal Affairs Unit, Rule C provides: "C. All employees of the Cobb County Police Department shall submit to a polygraph examination on the order of the Director of Public Safety, his representative or the Internal Affairs Unit. (1) When an employee is the *direct subject* of an Internal Investigation, *he shall be advised of the allegations against him and the name of the complaining person, prior to taking a polygraph examination.* (2) Employees who are not the direct subject of an Internal Investigation, shall submit to a polygraph examination in order to corroborate testimony given during an internal investigation. (3) The refusal by work or deed to submit to a polygraph examination *under the above guidelines* shall be considered an act of insubordination and may subject the employee to disciplinary action, up to and including termination." (Emphasis

supplied.)

Also, Rule 1.45 of the Cobb Police Code of Conduct provides: "TESTIMONY. Upon the order of the . . . Commander of the Internal Affairs Unit, all personnel shall submit to any . . . polygraph examinations. . . . All procedures carried out under rule *shall be specifically directed and narrowly related to a particular investigation being conducted* by the Department." (Emphasis supplied.)

Mrs. Dotzenrod, a neighbor of appellant Guntharp, had made a formal complaint that someone had shot her dog and (although she did not directly accuse Guntharp) that she believed Guntharp might know something about the incident. Guntharp was informed of the complaint concerning the shooting of Mrs. Dotzenrod's dog and was ordered to go to a certain location and take a polygraph test. Guntharp immediately complied with the order and prepared to submit or did submit (as the facts may be) to the polygraph procedure. During the initial stages of the testing procedure wherein the examiner was explaining the testing procedure and going over the questions to be asked, Guntharp was told there would also be questions concerning a shooting into a house as well as a shooting of some horses.

At this point, Guntharp became concerned or upset because he was not aware of and had not been informed of any complaints concerning shootings other than of Mrs. Dotzenrod's dog. He interrupted the proceedings and asked if he might call his attorney, but he was told, "We don't deal with attorneys." At that point, Guntharp declined to take or finish the polygraph procedure until he could consult his attorney. Two hours later, after his attorney advised him to take the test, Guntharp called his superiors and stated he would submit to the test. But his superiors considered that he had already refused to submit to the test and had thus committed an act of insubordination, and he was terminated under Department Rule C (3), quoted above.

In fact, the question concerning the shooting of horses was a "control question," a fictitious question used for comparison purposes to test the subject's response to known facts. But the shooting into a house was a real incident in which a weapon of the same caliber (.22) had apparently been used as with the dog.

Although no complaint concerning the house had been made against Guntharp (nor, apparently, against anyone) and he had not been informed of such a complaint, his supervisor testified that the question concerning the shooting into a house was asked or was going to be asked because "we needed it answered." Moreover, the superior testified that there was an internal investigation concerning the

shooting into a house, and indicated that if Guntharp had, according to the lie detector test evaluation, "admitted" he had shot into a house, he would have been charged in a criminal investigation. *Held:*

The trial court erred in denying certiorari to hear Guntharp's appeal of the Cobb Civil Service Board's decision upholding his termination. The evidence shows that, because of the complaint that Guntharp might "know something" about the shooting of a dog, suspicion had focused upon him concerning another incident being investigated. The conclusion is inescapable that he was (by circumstantial evidence that a weapon of the same caliber was used) under direct suspicion and was in fact "the direct subject of an Internal investigation" concerning a shooting into a house, liable to be criminally investigated and prosecuted if his response to this line of questioning was deemed unsatisfactory. He was not advised of the identity of the complainant nor that he was directly or indirectly a subject of this allegation as directed by Department Rule 3 (1). His refusal to complete the test procedure under these circumstances, if indeed his request to consult counsel before continuing the test was a "refusal," was thus not a refusal to submit to a polygraph test conducted "under the . . . guidelines" of Rule 3 (1).

There was therefore a real issue whether there was "substantial admissible evidence" to sustain the decision of the Cobb Civil Service Board, which is the standard of review of the superior court on certiorari (OCGA § 5-4-12 (Code Ann. § 19-402)). The standard of appellate court review of superior court decisions, that of "some" or "any evidence" (see *Cannon v. Macon Fire &c. Bd.,* 137 Ga. App. 803, 804 (224 SE2d 851)), is not intended to supervene or diminish the requirement that an administrative ruling be supported by substantial evidence (OCGA § 5-4-12 (Code Ann. § 19-402), supra). In *Cannon,* supra, the superior court granted certiorari and heard that case on the merits; and we agreed with its conclusion that the administrative decision was sustained by the evidence. But a denial of certiorari, as in the case sub judice, is a refusal to hear the case merits at all. Wherever evidence before the administrative board is equivocal and certiorari is denied by the trial court, it can always be said that the denial was supported by "some" evidence (see, e.g., *Flacker v. Berr-Nash Corp.,* 157 Ga. App. 638 (278 SE2d 180)), but that does not mean the administrative ruling was supported by *substantial* evidence and that denial of certiorari was therefore proper. We find that the superior court erred in denying certiorari to determine whether the administrative board's ruling in this case was supported by *substantial evidence.*

In so finding, we do not consider any constitutional issues of the permissible scope of a mandatory polygraph test conducted of a

person (including a police officer) who is the specific object of an investigation which could result in criminal prosecution or loss of employment, as opposed to generalized testing relating to fitness for job performance or testing of persons who are "not the direct subject" of a particular investigation as outlined in Rule C (2) of the Cobb Police Department General Order Manual. We note, however, that Rule B (7) of the Cobb Police Department General Order Manual provides: "7. When the employee being interviewed is under arrest or is likely to be placed under arrest as a result of the interview, he shall be informed of his/her constitutional rights prior to the commencement of the interview." Rule B (8) provides: "8. An employee under arrest, who exercises his constitutional rights, may have an attorney of his choice present during the interview. The attorney shall not participate in the interview, except to counsel the employee. The employee may request a postponement of the initial interview to contact the attorney of his choice." These rules indicate that the Cobb Police Department is cognizant that certain basic constitutional protections should inhere in internal investigative procedures when an employee is the direct focus of an investigation and is thereby subjected to grave detriment.

*Judgment reversed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 16, 1983.

*James C. Strayhorn, Charles S. Hunter,* for appellant.
*David P. Hartin, John H. Moore,* for appellees.