GRACE DRILLING
COMPANY, Petitioner,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, Department of Employment Security, and Gordon E. Goodale, Respondents.

No. 880572–CA.

Court of Appeals of Utah.

June 2, 1989.

Frederick M. MacDonald, Salt Lake City, for petitioner.

R. Paul Van Dam and Alan Hennebold, Salt Lake City, for respondents.

Before BILLINGS, GARFF, and
JACKSON, JJ.

## OPINION

BILLINGS, Judge:

Petitioner Grace Drilling Company appeals from the decision of the Board of Review of the Industrial Commission ("Board") awarding Gordon E. Goodale unemployment compensation benefits. The Board concluded Mr. Goodale was not discharged from his employment for disqualifying conduct under Utah Code Ann. § 35–4–5(b)(1) (1988). We affirm the Board's determination.

## FACTS

We review only those facts relevant to the issues presented. In January 1988, Mr. Goodale was hired by Grace Drilling to work as a foreman on two of its oil drilling rigs in Uintah County, Utah. As a condition of employment, Mr. Goodale agreed to abide by Grace Drilling's safety manual, work rules, and regulations. Mr. Goodale also consented to submit to random drug testing. Both Grace Drilling's safety manual and the consent forms signed by Mr. Goodale clearly stated that testing positive on a drug screen while on duty was cause for discharge. Mr. Goodale acknowledged that he had read and understood the manual, drug policy, and consent form.

While at work on March 17, 1988, Mr. Goodale was randomly selected for drug testing. He voluntarily submitted a urine sample and executed another consent form. On the form, Mr. Goodale disclosed that he had been taking Advil within the past seven days. Mr. Goodale also verbally informed his supervisor that he had been taking two prescription drugs for lower back pain, the names of which he could not recall. He offered to go home to retrieve the names of the drugs, but Mr. Goodale's supervisor informed him that it was unnecessary. Instead, the supervisor informed Mr. Goodale that if the test results were positive, he would be given an opportunity to present the names of the other two drugs for Grace Drilling to consider. The

drug test was conducted and Mr. Goodale's urine sample tested positive for marijuana. Mr. Goodale was discharged on March 24, 1988, without being given an opportunity to provide the names of the two prescription drugs he told his supervisor he had been using prior to the drug test.

Mr. Goodale filed for and was awarded unemployment benefits. Grace Drilling appealed the Department of Employment Security's initial determination by notice dated May 12, 1988. At the administrative hearing, Grace Drilling's representative had no personal knowledge of Mr. Goodale's drug test or the circumstances surrounding his discharge. Furthermore, the written test results were not offered into evidence, and Grace Drilling failed to call any witness who had administered the test or who was otherwise familiar with the testing procedures. Instead, Grace Drilling's representative merely testified as to what she had been told by others about Mr. Goodale's test results.

At the conclusion of the hearing, the appeal referee requested further information, including a copy of the test results which Grace Drilling agreed to provide. The record was left open for this purpose. However, Grace Drilling later advised the appeal referee that it would not provide the test report. Accordingly, the appeal referee affirmed the Department of Employment Security's initial disposition awarding Mr. Goodale benefits based on the available evidence in the record. Specifically, the appeal referee found that Grace Drilling failed to provide sufficient foundation to support the validity of a positive test result, and its hearsay testimony that Mr. Goodale tested positive was contested by sworn testimony. The appeal referee also found that Grace Drilling refused to verify the positive test result or offer evidence negating the possibility that the prescription drugs reportedly taken by Mr. Goodale could have affected the outcome of the test. Accordingly, since no other reasons were given by Grace Drilling for terminating Mr. Goodale, the appeal referee concluded that he was entitled to unemployment benefits.

Following the appeal referee's decision, Grace Drilling filed its appeal and submitted to the Board the written test report originally requested by the appeal referee. The Board refused to accept the proffered report stating that "[t]o consider such evidence would deny the claimant due process by depriving him of the right to challenge and rebut the information contained therein." The Board further concluded the appeal referee's decision was a correct application of the Utah Employment Security Act, supported by competent evidence, and therefore, affirmed the award of unemployment compensation benefits to Mr. Goodale.

Grace Drilling raises two issues in this appeal claiming, (1) there is substantial evidence that Mr. Goodale was terminated for just cause because he tested positive for drug use while on duty, and (2) the Board abused its discretion in refusing to consider the proffered test results.

## STANDARDS OF REVIEW UNDER THE UTAH ADMINISTRATIVE PROCEDURES ACT

These proceedings were commenced after January 1, 1988, and thus our review is governed by Utah Code Ann. § 63–46b–16(4) (1988) of the Utah Administrative Procedures Act ("UAPA").[1] Section 63–46b–16(4) governs judicial review of formal adjudicative proceedings and provides:

The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

(a) the agency action, or the statute or rule on which the agency action is based, is unconstitutional on its face or as applied;

(b) the agency has acted beyond the jurisdiction conferred by any statute;

(c) the agency has not decided all of the issues requiring resolution;

(d) the agency has erroneously interpreted or applied the law;

(e) the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure;

(f) the persons taking the agency action were illegally constituted as a decision-making body or were subject to disqualification;

(g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;

(h) the agency action is:

(i) an abuse of the discretion delegated to the agency by statute;

(ii) contrary to a rule of the agency;

(iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency; or

(iv) otherwise arbitrary or capricious.

Grace Drilling claims the Board's findings of fact are not supported by substantial evidence as required under § 63–46b–16(4)(g). No reported Utah case to date has directly addressed whether the UAPA modifies the standard for reviewing the Board's findings of fact previously uti-

---

**1.** See Utah Code Ann. §§ 63–46b–1 to –22 (1988 Supp.). Section 63–46b–22(1) provides that the UAPA applies to "all agency adjudicative proceedings commenced by or before an agency on or after January 1, 1988...." Additionally, § 63–46b–1(1)(b) provides, with our emphasis, that the UAPA governs judicial review of agency actions "[e]xcept as set forth in Subsection (2), and *except as otherwise provided by a statute superseding provisions of [UAPA] by explicit reference to [UAPA]....*" The Utah Employment Security Act has no such superseding provisions concerning judicial review, and therefore our review is governed by § 63–46b–16(4). We also note that the UAPA is substantially similar to the Uniform Model State Administrative Procedure Act (1981), 14 U.L.A. 69 (1988) ("MSAPA"). *See Utah A.P.A. 1988–89,* comments of the Utah Administrative Law Advisory Committee at 10 (April 25, 1988). Specifically, § 63–46b–16(4)(a)-(h) "are patterned after the comparable provisions in the MSAPA (Sections 5–116(c)(1) through 5–116(c)(8))." *Utah A.P.A. 1988–89, supra,* at 15.

lized by Utah courts. Thus, the issue is one of first impression.

### Standard for Reviewing the Board's Factual Findings Prior to the UAPA

Prior to the UAPA, the standards for reviewing administrative agency proceedings on appeal were a combination of specific statutory provisions governing judicial review of particular agency determinations, interpreted in light of "established principles governing judicial review of administrative agencies generally." *See Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 607 (Utah 1983).

Utah Code Ann. § 35–4–10(i) (1988) (superseded by § 63–46b–16(4)(g)) set forth the standard for reviewing the Board's findings of fact and provided in relevant part:

> In any judicial proceeding under this section, the findings of the commission and the board of review as to the facts if supported by evidence, are conclusive and the jurisdiction of the court is confined to questions of law.

One of the earlier Utah Supreme Court decisions interpreting this provision held the Board's findings of fact will be affirmed "if there is *evidence of any substance whatever* which can reasonably be regarded as supporting the determination made...." *Kennecott Copper Corp. Employees v. Department of Employment Sec.*, 13 Utah 2d 262, 372 P.2d 987, 989 (1962). This standard has been followed on a number of occasions, including the Utah

Supreme Court's landmark pronouncements concerning judicial review of administrative proceedings in *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 607–12 (Utah 1983). In *Administrative Services*, the court stated in dicta, "in reviewing decisions on unemployment compensation ... we have declared that we will sustain the findings of the Board if 'there is *evidence of any substance whatever* which can reasonably be regarded as supporting the determination made....' " *Id.* at 609 (quoting *Kennecott Copper*, 372 P.2d at 989) (emphasis in original).[2]

However, there are also a number of Utah decisions that, without elaboration, have used different terminology in discussing the applicable standard for reviewing the Board's findings of fact. For example, in *Northwest Foods Ltd. v. Board of Review*, 731 P.2d 470, 471 (Utah 1986), the Utah Supreme Court declared that the Board's findings of fact "are conclusive and binding, and are to be sustained if supported by competent and substantial evidence in the record."[3]

Notwithstanding these variations in terminology, under the UAPA, it is clear that the Board's findings of fact will be affirmed only if they are "supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1988). This "substantial evidence test" grants appellate courts greater latitude in reviewing the record than was previously granted under the Utah Employment Security Act's "any evidence of substance test."

---

**2.** *See also, e.g., West Jordan v. Department of Employment Sec.*, 656 P.2d 411, 413 (Utah 1982) (findings of fact are conclusive "if supported by evidence of any substance"); *Taylor v. Department of Employment Sec.*, 647 P.2d 1, 1 (Utah 1982). *Accord Grinnell v. Board of Review*, 732 P.2d 113, 115 (Utah 1987) (per curiam); *Terminal Serv. Co. v. Board of Review*, 714 P.2d 298, 299 (Utah 1986) (per curiam); *Mayes v. Department of Employment Sec.*, 754 P.2d 989, 991 (Utah Ct.App.1988); *Jim Whetton Buick v. Department of Employment Sec.*, 752 P.2d 358, 360 (Utah Ct.App.1988); *Stegen v. Department of Employment Sec.*, 751 P.2d 1160, 1162 (Utah Ct.App.1988).

**3.** *See also, e.g., Covington v. Board of Review*, 737 P.2d 207, 209 (Utah 1987) (findings must be supported by "substantial evidence"); *Salt Lake City Corp. v. Department of Employment Sec.*, 657 P.2d 1312, 1315 (Utah 1982); *Stegen v. Department of Employment Sec.*, 751 P.2d 1160, 1163 (Utah Ct.App.1988) (we affirm Board's findings if they have "substantial support in the record," citing *Northwest Foods*, 731 P.2d at 471); *Chrysler Dodge Country v. Department of Employment Sec.*, 751 P.2d 278, 281 (Utah Ct. App.1988).

UAPA's "Substantial Evidence" Test [4]

■ Substantial evidence is "more than a mere 'scintilla' of evidence ... though 'something less than the weight of the evidence.'" *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 715 P.2d 927, 930 (1985) (quoting *Consolo v. FMC*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* [5]

In applying the "substantial evidence test," we review the "whole record" before the court, and this review is distinguishable "from both a *de novo* review and the 'any competent evidence' standard of review." [6] Moreover, under the "whole record test," a court must consider not only the evidence supporting the Board's factual findings, but also the evidence that "fairly detracts from the weight of the [Board's] evidence." [7] It is also important to note that the "whole record test" necessarily requires that a party challenging the Board's findings of fact must *marshall* all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence. *Cf. Cornish Town v. Koller*, 758 P.2d 919, 922 (Utah 1988) (to mount an attack on a trial court's findings of fact "an appellant must marshall the evidence supporting the trial court's findings"). *See also Sampson v. Richins*, 770 P.2d 998, 1002 (Utah Ct.App.1989).

In undertaking such a review, this court will not substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review. *See Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 233 S.E.2d 538, 541 (1977). *Cf. Stegen v. Department of Employment Sec.*, 751 P.2d 1160, 1163 (Utah Ct.App.1988). It is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences. *Board of Educ. of Montgomery County v. Paynter*, 303 Md. 22, 491 A.2d 1186, 1193 (1985).

## TERMINATION FOR CAUSE

■ The Board concluded Grace Drilling failed to meet its burden of establishing

---

4. *See, supra*, note 1. In the absence of Utah authority interpreting provisions of the MSAPA, we turn to those jurisdictions with similar provisions for guidance.

5. *See also Hockaday v. D.C. Dep't of Employment Servs.*, 443 A.2d 8, 12 (D.C.1982); *Board of Educ. of Montgomery County v. Paynter*, 303 Md. 22, 491 A.2d 1186, 1193 (1985); *Wright v. State Real Estate Comm'n*, 208 Neb. 467, 304 N.W.2d 39, 44 (1981); *Cook v. Employment Div.*, 47 Or.App. 437, 614 P.2d 1193, 1195 (1980); *Sweet v. State Technical Inst. at Memphis*, 617 S.W.2d 158, 161 (Tenn.Ct.App.1981); *Roberts v. Employment Sec. Comm'n of Wyoming*, 745 P.2d 1355, 1357 (Wyo.1987).

6. *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 233 S.E.2d 538, 541 (1977) (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). *Accord Guntharp v. Cobb County, Georgia*, 168 Ga.App. 33, 307 S.E.2d 925, 927 (1983) (decision supported by some or any evidence rule does not mean the decision was supported by "substantial evidence"); *Midstate Oil Co. v. Missouri Comm'n on Human Rights*, 679 S.W.2d 842, 846 (Mo.1984) (substantial evidence test is different than "some" evidence test).

7. *Thompson*, 233 S.E.2d at 541. *See also, e.g., Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me.1982); *Beebee v. Haslett Pub. Schools*, 406 Mich. 224, 278 N.W.2d 37, 39–40 (1979); *Lackey v. North Carolina Dep't of Human Resources*, 306 N.C. 231, 293 S.E.2d 171, 176 (1982).

This requirement most distinguishes the "substantial evidence test" from the "any evidence rule." Under the latter test, a court's limited review was qualitative in that it only considered whether there was *any competent* evidence in the record supporting the Board's determination. In essence, courts reviewed only that portion of the record supporting the Board's findings. In contrast, the "substantial evidence test" is both a qualitative and "quantitative" inquiry. We now review both sides of the record to determine whether the Board's findings are supported by substantial evidence. *See generally In re Southview Presbyterian Church*, 62 N.C.App. 45, 302 S.E.2d 298, 299 (1983) (substantial evidence test requires court to consider contradictory evidence, and the evidence required to support agency determination "is greater than that required under the 'any competent evidence' standard of review").

Mr. Goodale was terminated from his employment for just cause as it did not establish he tested positive for drug use while on duty. Grace Drilling argues it met its burden through the proper application of Utah Code Ann. § 34–38–10(2)(a) (1988), which creates a rebuttable presumption in favor of the employer that drug test results are valid so long as certain testing procedure criteria are met as specified in § 34–38–6.[8] For purposes of discussion, we assume without deciding that the Utah Drug and Alcohol Testing statute, Utah Code Ann. §§ 34–38–1 to –15 (1988), applies to administrative hearings such as the one before us, but nevertheless, we find Grace Drilling's reliance on its provisions misguided.

Grace Drilling argues that it complied with the statutory requirements and therefore, Mr. Goodale was terminated for cause because he failed to rebut the presumption that he tested positive for marijuana while on duty. However, based on the Board's findings of fact, Grace Drilling failed to demonstrate that its testing procedures met the enumerated criteria set forth in § 34–38–6. For example, § 34–38–6(3)(b) requires that an employee be given an opportunity to provide information concerning any prescription drugs presently or previously taken. The Board found that at the time Mr. Goodale was tested, he was using two unidentified prescription drugs and was not given an opportunity to identify the drugs before he was discharged.

More importantly, Grace Drilling failed to demonstrate that its testing procedures "conform[ed] to scientifically accepted analytical methods and procedures." *See* § 34–38–6(5). The only testimony offered by Grace Drilling to meet the statutory requirement was the hearsay testimony of its office manager who admitted she had no personal knowledge of the testing procedures or test results, and who, therefore, clearly was not qualified to provide the necessary foundation for receiving the positive test results into evidence. Conversely, Mr. Goodale's sworn testimony states that he had not used marijuana while working for Grace Drilling and that he had been taking two unknown prescription drugs which conceivably could have affected the test results.

■ In sum, there was simply no competent evidence before the Board entitling Grace Drilling to the statutory presumption. Neither was there competent evidence demonstrating that Mr. Goodale tested positive for marijuana while on duty. The office manager's hearsay testimony, standing alone, could not provide a basis to establish Mr. Goodale tested positive. *See, e.g., Mayes v. Department of Employment Sec.*, 754 P.2d 989, 992 (Utah Ct.App.1988) (findings cannot be based entirely on hearsay evidence). Accordingly, we find no error in refusing to grant Grace Drilling the statutory presumption set forth in § 34–38–10(2)(a). In the absence of any

8. Section 34–38–6, entitled "Requirements for collection and testing," provides as follows:

All sample collection and testing for drugs and alcohol under this chapter shall be performed in accordance with the following conditions:

(1) The collection of samples shall be performed under reasonable and sanitary conditions;

(2) Samples shall be collected and tested with due regard to the privacy of the individual being tested, and in a manner reasonably calculated to prevent substitutions or interference with the collection or testing of reliable samples;

(3) Sample collection shall be documented, and the documentation procedures shall include:

(a) labeling of samples so as reasonably to preclude the probability of erroneous identification of test results; and

(b) an opportunity for the employee or prospective employee to provide notification of any information which he considers relevant to the test, including identification of currently or recently used prescription or nonprescription drugs, or other relevant medical information.

(4) Sample collection, storage, and transportation to the place of testing shall be performed so as reasonably to preclude the probability of sample contamination or adulteration; and

(5) Sample testing shall conform to scientifically accepted analytical methods and procedures. Testing shall include verification or confirmation of any positive test result by gas chromotography, gas chromotography-mass spectroscopy, or other comparably reliable analytical method, before the result of any test may be used as a basis for any action by an employer under Section 34–38–8.

competent evidence demonstrating that Mr. Goodale tested positive for marijuana while on duty, and in light of Mr. Goodale's sworn testimony to the contrary, the Board's conclusion that Mr. Goodale was not terminated for disqualifying conduct under the Employment Security Act is supported by substantial evidence in the record.

## COMMISSION'S REFUSAL TO CONSIDER PROFFERED TEST RESULTS

 We next address Grace Drilling's claim the Board abused its discretion[9] in refusing to reopen the record to consider the proffered test results which allegedly demonstrated that Mr. Goodale had tested positive for marijuana. Grace Drilling concedes it refused to submit the test results at the administrative hearing but claims it was trying to avoid confidentiality problems and protect Mr. Goodale's privacy interests. We are not persuaded by Grace Drilling's argument.

First, it is undisputed that Mr. Goodale was discharged solely because he tested positive for illegal drugs while on duty. It reasonably follows that the test results were crucial to Grace Drilling's burden of establishing that Mr. Goodale was discharged for "just cause." Grace Drilling was given two opportunities to present the results and lay the appropriate foundation for receiving them into evidence. Grace Drilling declined on both occasions, and its post-hearing confidentiality justification simply is not persuasive as the appeal referee could have taken the appropriate precautions to protect the confidentiality of the report.

In short, the test results were clearly available at the time of the hearing and the Board so noted. The Board declined to consider the test results stating to do so would have deprived Mr. Goodale of the opportunity to rebut or cross-examine. We agree. Elementary fairness in unemployment compensation adjudications includes a

party's right to see adverse evidence and be afforded an opportunity to rebut such evidence. *See, e.g., Lanier-Brugh, Inc. v. Industrial Comm'n,* 761 P.2d 572, 575–76 (Utah Ct.App.1988). Grace Drilling argues that Mr. Goodale could be given an opportunity to challenge the results if the matter were merely remanded to the appeal referee to take additional evidence. However, we do not believe granting parties *"three bites at the apple"* is consonant with efficient administrative procedure. Grace Drilling had ample opportunity to present its case and failed to meet its burden. We hold the Board did not abuse its discretion in refusing to consider the test results.

Based on the foregoing, the Board's order granting Mr. Goodale unemployment compensation benefits is affirmed.

GARFF and JACKSON, JJ., concur.

---

9. *Compare* Utah Code Ann. § 63–46b–16(4)(h)(i) (1988) *with* Utah Admin R. 475–10d–3(2) (1987–88).