Charlotte Hanks WURST, Petitioner,

v.

DEPARTMENT OF EMPLOYMENT
SECURITY, Respondent.

No. 900249–CA.

Court of Appeals of Utah.

Sept. 20, 1991.

Charlotte Hanks Wurst, pro se.

R. Paul Van Dam, Winston M. Faux, and Emma R. Thomas, Salt Lake City, for respondent.

Before GARFF, BENCH and BILLINGS, JJ.

## OPINION[1] ON PETITION FOR REHEARING

PER CURIAM:

Petitioner, Charlotte Wurst, seeks review of a decision of the Board of Review of the Industrial Commission denying her unemployment insurance benefits on the ground that she left her employment to follow her spouse to a new location. We affirm.

Wurst was employed at The Peppermill Resort in Mesquite, Nevada from November 21, 1988 to July 7, 1989 but lived in St. George, Utah. In June of 1989, Wurst's employer installed numerous speakers and piped in rock music into the basement area where Wurst worked. Although Wurst could turn her speaker down, the music from the other speakers continued to irritate her. When Wurst complained about the music to her supervisor, the employer did not act upon the complaints. On July 7, 1989, Wurst left her job. On July 12, 1989, Wurst and her husband moved to California where he had accepted a new job. In December 1989, Wurst and her husband moved back to Utah, and Wurst filed a claim for unemployment compensation benefits.

At a hearing before an administrative law judge (A.L.J.), Wurst testified that she told her employer at the time she quit her job that she was quitting because her husband had accepted a job in California. However, Wurst testified at the hearing that she really left her job because the music bothered her, the area in which she worked was a fire hazard, and she was concerned about her employer's practice of requiring employees to work overtime without compensation. Wurst stated that she did not communicate these complaints to her employer at the time she quit because she wanted to make her departure as friendly and pleasant as possible.

The A.L.J. found that Wurst left her job to relocate with her husband and denied benefits on the ground that Utah Administrative Code R475-5a-4 (1991) provides that an individual leaves work without good cause if he or she quit to follow a spouse. The A.L.J. also concluded that even if Wurst left work because of unsatisfactory working conditions, benefits would be denied on the ground that Wurst did not have good cause for quitting. The Board of Review affirmed the A.L.J.'s decision and adopted the A.L.J.'s findings of fact and conclusions of law.

■ We first examine whether the Board erred in finding that Wurst left her job to relocate with her husband. In reviewing the Board's findings of fact, we will affirm those findings if they are "supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63-46b-16(4)(g) (1989). "Substantial evidence is 'more than a mere scintilla of evidence ... though something less than the weight of the evidence.'" *Grace Drilling v. Board of Review*, 776 P.2d 63, 68 (Utah App.1989) (citation omitted). In reviewing the evidence, this court will not substitute its judgment for the Board's judgment as between two reasonably conflicting views. *Id.*

---

1. This opinion replaces the unpublished memorandum decision rendered in this case on May 2, 1991.

■ Utah Administrative Code R475–5a–4 (1991) provides that "[a]n individual leaves work without good cause, regardless of the reason for the move, if he or she quit to move with, follow or join, a lawful wife or husband, to or in a new place of residence from which it is not practical to commute to the employment." In this case, the Board found that Wurst quit her job to accompany her spouse. The record reflects that Wurst moved to California five days after terminating her employment. When the A.L.J. asked her when she first learned of her husband's job offer, she stated that it was about June 28, right about the time she gave notice that she was terminating. Wurst also testified that she told her employer she was leaving because of her husband's job. Although Wurst contended she quit work because of the music, her fear of a fire, and the employer's practice of requiring overtime without compensation, the Board rejected her claim that she left her employment for these reasons and found that she left work to accompany her spouse to a new location. We defer to the Board's assessment of conflicting evidence. Because Wurst told her employer she was leaving due to her husband's job, and because Wurst gave notice of termination shortly before she left to accompany her spouse to his new job, we find substantial evidence in the record to support the Board's finding that she left her job to accompany her spouse to a new location.

Wurst also claims she should not be denied unemployment insurance benefits because she left work "under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification." Accordingly, she claims, she is entitled to benefits under Utah Code Ann. § 35–4–5(a) (1990). The Department, however, claims that the legislature did not intend to permit an employee to obtain unemployment insurance benefits under the equity and good conscience provision if the employee voluntarily quit to follow his or her spouse.

■ Generally, statutory interpretation presents a question of law and we apply a correction-of-error standard, according no deference to the administrative agency's interpretation. *Chris & Dick's Lumber v. Utah State Tax Comm'n*, 791 P.2d 511, 513 (Utah 1990). However, we defer to the agency's statutory interpretation when there is a grant of discretion to the agency concerning the language, either expressly in the statute or implied from the statutory language. *Morton Int'l, Inc. v. Utah State Tax Comm'n*, 814 P.2d 581, 588–90 (Utah 1991).

Section 35–4–5(a) provides:

For the week in which the claimant left work voluntarily without good cause, if so found by the commission, and for each week thereafter until the claimant has performed services in bona fide covered employment and earned wages for those services equal to at least six times the claimant's weekly benefit amount. A claimant shall not be denied eligibility for benefits if the claimant leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification.

The commission shall, in cooperation with the employer, consider the purposes of this chapter the reasonableness of the claimant's actions, and the extent to which the actions evidence a genuine continuing attachment to the labor market in reaching a determination of whether the ineligibility of a claimant is contrary to equity and good conscience.

Notwithstanding any other provision of this section, a claimant who has left work voluntarily to accompany, follow, or join his or her spouse to or in a new locality does so without good cause for purposes of this subsection.

■ Because section 35–4–5(a) does not expressly or impliedly grant the agency discretion in dealing with this specific statutory provision, the issue is a straightforward question of statutory construction. Consequently, we apply a correction-of-error standard. *See Morton*, 814 P.2d at 588–90.

According to section 35–4–5(a), even if an employee lacks good cause for leaving work, the employee may be eligible for

benefits if the employee "leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification." The provision stating that leaving work to follow a spouse does not constitute good cause does not explicitly provide that the employee is not entitled to benefits if the employee satisfies the equity and good conscience criteria. We, therefore, must examine whether the legislature intended to provide coverage under the equity and good conscience exception for employees who leave work to follow a spouse.

To establish entitlement to benefits under the equity and good conscience criteria, four elements must be satisfied: 1. the decision must be made in cooperation with the employer by giving the employer an opportunity to provide information; 2. the claimant must act reasonably; 3. a denial of benefits must be inconsistent with the intent of the unemployment insurance program; and 4. the claimant must demonstrate a continuing attachment to the labor market. Utah Admin.Code R475–5a–3. In many instances in which an employee leaves employment to follow a spouse, the employee could likely establish elements 1, 2, and 4. However, if we construe the statute to provide that all employees who leave employment to follow a spouse are eligible for benefits under the equity and good conscience provision, almost all employees who quit work to follow a spouse would be eligible for unemployment insurance benefits. Because that interpretation would, in effect, nullify the last paragraph in section 35–4–5(a), we do not believe the legislature intended such a result. In addition, the quit-to-follow spouse provision is located in a separate paragraph at the end of section 35–4–5(a), rather than within the first paragraph, indicating that the legislature intended to exclude from coverage all employees who leave work to follow a spouse. Therefore, it would be contrary to the intent of the statutory scheme if an employee who quit to follow a spouse was eligible for unemployment insurance benefits under the equity and good conscience provision.

■ We, therefore, conclude that under section 35–4–5(a), a person who voluntarily leaves employment to follow his or her spouse and satisfies the criteria set forth in section 35–4–5(a) and Utah Administrative Code R475–5a–4, does so without good cause and is ineligible for benefits under the equity and good conscience provision of section 35–4–5.[2] Accordingly, because Wurst quit to follow her spouse, she did not leave work with good cause and not entitled to unemployment insurance benefits under the equity and good conscience provision in section 35–4–5(a).

■ Wurst also contends she was not informed of her option to file a claim for benefits in Nevada. The Department claims Wurst failed to raise the issue regarding the Nevada claim in the tribunal below. It is well-settled that this court will not address an issue raised for the first time on appeal. *Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 242 (Utah App. 1991). However, Wurst's letter to the Department, which serves as her appeal of the A.L.J.'s decision, states that her case should have been handled in Nevada. We deem that statement in her letter sufficient to raise the matter before the Board.[3]

■ However, although Wurst claims she should have been given the option to file a Nevada claim, we fail to see any duty

---

2. To clarify the statute, the legislature need only add the following phrase to the end of section 35–4–5(a): "and is not eligible for unemployment insurance benefits under the equity and good conscience provision."

3. Wurst was clearly entitled to represent herself in these proceedings. Utah Code Ann. § 78–51–25 (1987). Generally, a person who represents him- or herself "will be held to the same standard of knowledge and practice as any qualified member of the bar." *Nelson v. Jacobsen,* 669

P.2d 1207, 1213 (Utah 1983) (citations omitted). However, a layperson acting as his or her own attorney "should be accorded every consideration that may reasonably be indulged." *Id.* "Reasonable consideration for a layman acting as his own attorney does not require the court to interrupt the course of proceedings to translate legal terms, explain legal rules, or otherwise attempt to redress the ongoing consequences of the party's decision to function in a capacity for which he is not trained." *Id.*

on the part of the Department to inform her of that option. We therefore find no merit in this contention.

The decision of the Board of Review is affirmed.

GARFF, BENCH and BILLINGS, JJ., concur.