IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| David E. Erickson, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner, | ) | Case No. 20110309-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Workforce Appeals Board, Department | ) | (July 19, 2012) |
| of Workforce Services, | ) | |
| | ) | |
| Respondent. | ) | 2012 UT App 201 |

-----

Original Proceeding in this Court

Attorneys:     Andrew W. Stavros, Salt Lake City, for Petitioner
                    Suzan Pixton, Salt Lake City, for Respondent

-----

Before Judges McHugh, Roth, and Christiansen.

ROTH, Judge:

¶1     David E. Erickson seeks judicial review of the Workforce Appeals Board's (the Board) conclusion that he was not eligible for unemployment benefits he received, as well as its assessment of an overpayment and fraud penalty. We decline to disturb the Board's decision.

¶2     Following a field audit, the Utah Department of Workforce Services (the Department) investigated whether Erickson was eligible for unemployment benefits he had received over the course of approximately seven months. Based on this investigation, the Department concluded that Erickson was not eligible for unemployment benefits because he was not unemployed. The Department also

concluded that Erickson had knowingly withheld material information or had failed to report information in order to receive unemployment benefits to which he was not entitled. Accordingly, the Department required him to repay the full amount of benefits he had received and assessed a fraud penalty. The Department's decision was affirmed by an Administrative Law Judge (the ALJ), and the ALJ's decision was in turn affirmed by the Board.

¶3 On appeal, Erickson first challenges the Board's conclusion that he was ineligible for unemployment benefits because he was not unemployed. Unemployment benefits are only available to "an individual who is or becomes unemployed." Utah Code Ann. § 35A-4-401(1)(a) (2011). "An individual is 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him . . . ." *Id.* § 35A-4-207. A claimant is unemployed and eligible for benefits if the claimant works "less than full-time" and if the claimant is "available for and actively seeking full-time suitable work." Utah Admin. Code R994-207-102(1)(a), (c).

¶4 A lack of income alone does not necessarily equate to eligibility for unemployment benefits, however. For example, unemployment benefits will not be paid to "a claimant who is devoting substantially all his time and efforts to . . . expanding an existing business even though he receives no income." *Id.* R994-207-101(1). In this regard, there are several "types of potentially employed claimants who need to have their claims examined," including corporate officers. *Id.* R994-207-101(2)(a). A corporate officer's eligibility to receive unemployment benefits must be scrutinized because though the officer might not receive income from the corporation, he may nonetheless be devoting substantial time and effort to the company, thus making him unavailable for other paid employment. As the Utah Supreme Court explained in *Child v. Board of Review*, 8 Utah 2d 239, 332 P.2d 928 (1958),

> A president of a corporation who is also a manager, who has year-round responsibility to operate the business of the corporation and does so, cannot by purportedly laying himself off as manager in those periods when there may be no actual business activity, but when his corporate duties and management activity persist in the pursuit of future or continued business of the company, obtain unemployment benefits. He is much in the same position as a man working on a deferred commission payment basis who certainly cannot be said to be unemployed during the time the commission actually is not paid, but earned.

*Id.* at 929.

¶5 Here, the Board concluded that because Erickson was the sole corporate officer of Eire Construction Services, Inc. (Eire) he was not unemployed and, thus, not eligible for unemployment benefits. Erickson however contends that the Board's decision was not supported by substantial evidence. "[T]he Board's [decision] . . . will be affirmed . . . if . . . supported by substantial evidence." *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 67 (Utah Ct. App. 1989) (internal quotation marks omitted); *accord* Utah Code Ann. § 63G-4-403(4)(g) (2011) ("The appellate court [in reviewing a final agency action] shall grant relief only if . . . it determines that . . . the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court."). "Substantial evidence is more than a mere scintilla of evidence . . . though something less than the weight of the evidence." *Grace Drilling Co.*, 776 P.2d at 68 (omission in original) (internal quotation marks omitted).

¶6 In reaching the conclusion that Erickson was not unemployed, the Board found that Erickson was a corporate officer for Eire at the time he filed for and received unemployment benefits. Eire's Articles of Incorporation identify Erickson as the sole officer, director, and registered agent for the corporation, and Erickson himself admitted to being Eire's sole corporate officer and registered agent. The Board also found that Eire was an "active company." Eire maintained a valid business license, telephone number, and bank account. Eire's financial records indicated that it generated income and paid for expenses each month, such as utilities, insurance, and legal fees. Erickson was one of only two people authorized to sign checks on Eire's bank account,[1] and Eire wrote several checks to Erickson during the period in question.

¶7 Erickson, however, claimed that he was a corporate officer in name only and had no active involvement with the company. Erickson explained that he registered Eire for a friend because that friend had "poor credit and [a] previous bankruptcy filing," and according to Erickson, that friend actually runs the business. Erickson further explained that although this friend was not authorized to sign corporate checks, Erickson would give him signed blank checks so he could pay for business expenses. He also claimed that the checks made out to him from Eire were not income; rather, a check for $2569.83 was payment to him for a trench box and trailer he sold to Eire, and other checks, made

---

1. Besides Erickson, the only other person authorized to write checks on Eire's bank account was Erickson's significant other.

out to him for $2500 and $1000, were payments from Eire to Erickson's grandmother. According to Erickson, Eire leased space on his grandmother's farm for $1200 per month to store equipment but paid the rent to him because he tends to handle his grandmother's finances. Erickson did not produce a lease agreement for Eire's equipment storage, and none of the check amounts matched the $1200 rent.

¶8    Based on this conflicting evidence, the Board concluded that Erickson was a corporate officer and therefore not unemployed and not eligible for unemployment benefits. The Board stated that it considered Erickson's attempts to explain his involvement with Eire to be "self-serving and not credible." *See generally Questar Pipeline Co. v. Utah State Tax Comm'n*, 850 P.2d 1175, 1178 (Utah 1993) (explaining that appellate courts defer to the Board's determinations concerning witness credibility). The Board reasoned that "[i]f [Erickson] did not want the responsibilities of a corporate officer, he should have taken his name off the corporate documents and the bank account," but "leaving his name on the documents and the bank account" gave weight to the position "that he was involved with the corporation on a day to day basis." The Board thus determined that even if Erickson was not earning any income, his involvement with the corporation was sufficient to establish that he was not unemployed. Given the evidence in the record, there is substantial evidence to support the Board's conclusion that Erickson was not unemployed but was, instead, a corporate officer, not entitled to unemployment benefits.[2]

¶9    Erickson next challenges the Board's conclusion that he committed fraud by failing to disclose material information in order to receive benefits to which he was not entitled, as well as the Board's resulting assessment of an overpayment and fraud penalty. In particular, Erickson argues that there is not substantial evidence to support the Board's decision. Three elements "must be prove[n] to establish an intentional misrepresentation sufficient to constitute fraud": materiality, knowledge, and willfulness. Utah Admin. Code R994-406-401(1); *see also* Utah Code Ann. § 35A-4-405(5) (2011).

---

2. Erickson also challenges the Board's decision that he was not eligible for unemployment benefits because he was not actively seeking employment. This aspect of the Board's decision was an alternative basis for its conclusion that Erickson was not eligible to receive unemployment benefits. As we have already upheld the Board's decision that Erickson was not eligible for unemployment benefits because he was a corporate officer and not unemployed, it is unnecessary for us to reach this particular issue.

¶10   Materiality is proven "when a claimant makes false statements or fails to provide accurate information for the purpose of obtaining . . . any benefit payment to which the claimant is not entitled." Utah Admin. Code R994-406-401(1)(a). On the occasions when Erickson applied for unemployment benefits, he was asked if he was an officer of a corporation. On each occasion, Erickson answered in the negative. We have already concluded that there was substantial evidence to support the Board's determination that Erickson was, in fact, a corporate officer, not entitled to unemployment benefits. *See supra* ¶ 8. Therefore, by representing that he was not a corporate officer, Erickson provided false information for the purpose of obtaining unemployment benefits to which he was not entitled. The element of materiality was therefore established.

¶11   The second element is knowledge. To establish knowledge, a claimant "must have known or should have known the information submitted to . . . [obtain unemployment benefits] was incorrect or that he or she failed to provide information required." Utah Admin. Code R994-406-401(1)(b). Because Erickson acknowledged that he was the sole corporate officer for Eire, he "must have known or should have known" that his repeated representation to the Department that he was *not* a corporate officer "was incorrect." *See id.* Although Erickson later attempted to justify his answer by arguing that he was a corporate officer for Eire in name only, the Board did not find his explanation credible. The element of knowledge was therefore established.

¶12   The third element is willfulness. Willfulness is established "when a claimant files claims or other documents containing false statements, responses or deliberate omissions." *Id.* R994-406-401(1)(c). "Fraud requires a willful misrepresentation or concealment of information for the purpose of obtaining unemployment benefits," but "[t]he absence of . . . direct proof of intent to defraud does not prevent a finding of fraud." *Id.* R994-406-401(2)-(3). By filing a claim for benefits in which he incorrectly reported his status as a corporate officer, Erickson filed "claims [for unemployment benefits] . . . containing false . . . responses." *Id.* R994-406-401(1)(c). The element of willfulness was therefore established.

¶13   In sum, we conclude that there is substantial evidence to support the Board's conclusion that Erickson committed fraud by failing to disclose material information in order to receive benefits to which he was not entitled. And accordingly, we conclude that the Board appropriately imposed an overpayment and fraud penalty. *See generally* Utah Code Ann. § 35A-4-405(5)(c) (providing that if a claimant obtains unemployment benefits by fraud, he or she "shall repay . . . the overpayment and, as a civil penalty, an amount equal to the overpayment").

¶14    Finally, Erickson argues that the Department violated his due process rights when it emailed him several documents it intended to use at the ALJ hearing only an hour before the hearing began.[3] Hearings before the ALJ must be "conducted . . . in such a manner as to provide due process and protect the rights of the parties." Utah Admin. Code R994-508-109(1). Relevant evidentiary documents must be disclosed at least three days prior to the hearing. *See id.* R994-508-109(11) ("Parties may introduce relevant documents into evidence . . . [and] must mail, fax, or deliver copies of those documents to . . . all . . . interested parties so that the documents are received three days prior to the hearing."). "If a party . . . does not receive the documents . . . prior to the hearing, the documents will be admitted after provisions are made to insure due process is satisfied." *Id.* Specifically, if documents are not provided three days prior to the hearing, the ALJ has discretion to "reschedule the hearing to another time," "allow the parties time to review the documents at an in-person hearing," "request that the documents be faxed during the hearing, if possible, or read the material into the record in case of a telephone hearing," or "leave the record of the hearing open, send the documents to the party or parties who did not receive them, and give the party or parties an opportunity to submit additional evidence after they are received and reviewed." *Id.* R994-508-109(11)(a)-(d).

¶15    By emailing the documents at issue only one hour before the hearing with the ALJ, the Department clearly failed to provide those documents to Erickson at least three days prior to the hearing. In dealing with a pro se claimant, the ALJ should be generous in granting continuances to insure the claimant is not put at a disadvantage where the Department has not timely complied with requirements regarding the disclosure of relevant information. However, under the circumstances, we conclude that Erickson was not prejudiced by the Department's untimeliness, and "provisions [we]re made to insure [that] due process [wa]s satisfied," *see id.* R994-508-109(11).

¶16    At the hearing, the ALJ confirmed that Erickson had earlier received most of the documents that the Department intended to rely on and asked Erickson about "10 or 12 more pages [he may have received] via e-mail." Erickson indicated that he had not received those pages, and the Department then explained that it had only sent them to Erickson an hour before the hearing. The ALJ asked Erickson to retrieve those documents from his e-mail and "take a moment to look through them." After Erickson

---

3. Erickson contends that the "documents were also never entered into evidence at the hearing." Our review of the record shows that the documents were admitted into evidence by the ALJ.

had done so, the ALJ questioned him about the documents--apparently checks written from Eire to Erickson[4]--and Erickson responded to those questions, particularly by explaining what the checks were meant to pay for, without protest or any apparent difficulty. Based on our review of the record, Erickson was given an opportunity to review the documents and was able to answer questions about the documents. Erickson makes no argument that he was harmed by the untimely delivery of these documents, and there is no indication in the record that he suffered any prejudice.

¶17    Accordingly, we decline to disturb the Board's decision.

_____
Stephen L. Roth, Judge

-----

¶18    WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
Michele M. Christiansen, Judge

---

4. While Erickson challenges his untimely receipt of these documents, he fails to provide any descriptive information or record citations to identify exactly the documents with which he takes issue. Because of ambiguities in how the exhibits and documents are described in the transcript of the ALJ hearing and how those exhibits and documents appear in the record, we are unable to definitively determine exactly which documents Erickson now objects to. But based on the transcript of the hearing before the ALJ, we presume that those ten or twelve documents are most likely checks made out from Eire to Erickson.