IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Waste Management and Indemnity Insurance of North America, | ) ) ) | MEMORANDUM DECISION |
| | | Case No. 20110450-CA |
| Petitioners, | ) ) | |
| v. | ) ) | F I L E D |
| | ) | (December 6, 2012) |
| Labor Commission and Cathie Hartley, | ) ) | |
| | ) | 2012 UT App 339 |
| Respondents. | ) | |

-----

Original Proceeding in this Court

Attorneys:    Brad J. Miller, Greenwood Village, Colorado, for Petitioners
              Michael G. Belnap, Ogden, for Respondent Cathie Hartley
              Alan L. Hennebold, Salt Lake City, for Respondent Labor Commission

-----

Before Judges Orme, Thorne, and Roth.

ORME, Judge:

¶1      Petitioners Waste Management and Indemnity Insurance of North America (Waste Management) ask us to review the Labor Commission Appeals Board's decision awarding Respondent Cathie Hartley temporary disability compensation and the costs of recommended surgery and medical treatment. We decline to disturb the Board's decision.

¶2      Hartley was injured when a garbage can containing a large piece of cement fell on top of her while she was working as a garbage truck driver for Waste Management. As a result of the accident, she sustained injuries to her lower extremities and tailbone.

Hartley's injuries were evaluated by Dr. Bean, who recommended a course of treatment that included a tailbone excision surgery. She was also evaluated by Dr. Moress, who opined that a tailbone excision surgery was not reasonably necessary to treat Hartley's injury. Despite Dr. Moress's contrary opinion, Dr. Bean maintained that although a tailbone excision is a rare procedure, it was necessary given Hartley's condition.

¶3     Hartley requested a hearing before the Utah Labor Commission, claiming that she was entitled to "[m]edical expenses, recommended medical care, temporary total disability compensation, permanent partial disability compensation, travel expenses and interest." Due to the disparate recommendations from Dr. Bean and Dr. Moress, the Administrative Law Judge (ALJ) commissioned an independent medical panel to examine Hartley. The panel opined that if Hartley decided to forgo the excision procedure, her tailbone condition would medically stabilize by July 17, 2007.[1] If, however, she elected to have the surgery, the panel believed that her condition would stabilize approximately six months thereafter. The panel also concluded that Hartley was a viable candidate for the excision procedure and deferred to the expertise of Dr. Bean "to discuss the [excision] procedure, risks, and possible outcomes."

¶4     After considering the panel's opinions and conclusions, the ALJ awarded Hartley, inter alia, temporary total disability compensation from February 24, 2007, to October 29, 2007,[2] as well as reasonable expenses for the excision surgery. The Board affirmed the ALJ's order. In its decision, the Board specifically "interpret[ed] the

---

[1]Curiously, the ALJ and the Board identified different dates when referring to the medical panel's July 17, 2007 stabilization date. In her Findings of Fact, Conclusions of Law and Order, the ALJ stated at one point that the panel's stabilization date was July 17, 2007, but at another point stated it was June 17, 2007. The Board identified the medical panel's stabilization date as November 2007. The exact date of predicted stabilization *without* surgery does not, ultimately, affect our decision.

[2]Hartley was unemployed but actively looking for work during this period. On February 24, 2007, she had been terminated by Davis County, where she had worked as an animal control officer, because as a result of her industrial injury, she was physically unable to perform assigned duties such as lifting a dog without assistance. She was unemployed until October 30, 2007, when she was hired as an animal control officer for Brigham City. That position affords her the opportunity to work with a partner, who can assist with heavy lifting.

medical panel's opinion as endorsing the recommended [excision surgery] as necessary treatment for Ms. Hartley's work-related [tailbone] injury." By determining that the surgery was necessary, the Board necessarily concluded that Hartley did not stabilize by July 17, 2007, and will not stabilize until approximately six months after the surgery is performed.

¶5      In essence, Waste Management's challenge raises two issues. The first is whether the Board incorrectly determined that Hartley would not medically stabilize without the tailbone excision surgery. "Stabilization is a factual question to be determined by medical evidence contained in the record." *Griffith v. Industrial Comm'n*, 754 P.2d 981, 983–84 (Utah Ct. App. 1988). When reviewing factual findings, we will only overturn those findings that are "not supported by substantial evidence when viewed in light of the whole record before the court."[3] Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2011).

¶6      Second, Waste Management argues that awarding Hartley temporary disability compensation up to October 29, 2007, was improper because Hartley had medically stabilized by July 17, 2007. Temporary disability compensation is only available during the time that an injured claimant is recuperating from work-related injuries, up until she reaches medical stabilization. *See Griffith*, 754 P.2d at 983. That compensation is calculated according to specific statutory criteria. *See* Utah Code Ann. § 34A-2-410

---

[3]A party challenging the Board's factual findings must marshal "all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 68 (Utah Ct. App. 1989). While Waste Management repeatedly refers to the medical panel's opinion that Hartley would have stabilized without surgery by July 17, 2007, Waste Management ignores the fact that the medical panel also believed Hartley to be a viable candidate for the surgery and deferred to the expertise of Dr. Bean, who believed that the surgery was necessary for Hartley to stabilize. The Board accepted Dr. Bean's view, and this conclusion was the crux of the Board's decision on the stabilization issue. It is Waste Management's burden to marshal that evidence along with all other "evidence supporting the findings." *See id.* Waste Management, instead, presents only the facts most favorable to its own argument, ignoring the ample evidence in the record supporting the Board's stabilization determination.

(LexisNexis 2011). Because the Labor Commission Act expressly grants the Board discretion in applying the provisions of the Workers' Compensation Act, *see Murray v. Labor Comm'n*, 2012 UT App 33, ¶ 15, 271 P.3d 192, *cert. granted*, 280 P.3d 421 (Utah 2012), we review the Board's award of temporary disability benefits "for an abuse of discretion, applying a test of reasonableness and rationality," *see id.* ¶ 27.

¶7 Waste Management insists that Hartley medically stabilized on July 17, 2007, basing its argument entirely on the medical panel's opinion that *without* the surgery she would stabilize by that date. "Stabilization means that the period of healing has ended and the condition of the claimant will not materially improve." *Booms v. Rapp Constr. Co.*, 720 P.2d 1363, 1366 (Utah 1986). When an injured claimant reaches the point of medical stabilization, she is no longer entitled to receive temporary disability benefits. *See Griffith*, 754 P.2d at 983. As previously indicated, in concluding that Hartley would not stabilize without surgery, the Board relied on (1) the medical panel's opinion that the surgery was a viable option and (2) Dr. Bean's recommendation that Hartley undergo the surgery. Thus, there is substantial evidence in the record to support the Board's pivotal finding.

¶8 After considering Hartley's "prolonged conservative treatment" and "prolonged course of pain," Dr. Bean recommended the excision surgery and opined that "it might significantly help [Hartley's] ability to sit." Despite Dr. Moress's contrary opinion, Dr. Bean did not waver in his belief that the procedure offered many potential benefits to someone in Hartley's condition. The medical panel, while acknowledging the rarity of the procedure, concluded that Hartley was a viable candidate for excision surgery. Moreover, the medical panel explicitly deferred to the expertise of Dr. Bean.

¶9 Although consistent with the alternative conclusion that the excision surgery is reasonable but not absolutely necessary, this evidence is substantial enough to support the Board's findings that surgery is necessary and that Hartley has not yet stabilized. *See generally Hurley v. Board of Review*, 767 P.2d 524, 526–27 (Utah 1988) (noting that an agency's findings of fact "are accorded substantial deference and will not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible"). Read together, the medical panel's findings and Dr. Bean's recommendation indicate that Hartley is an ideal candidate for the surgery and will likely continue to experience high levels of discomfort without it. Despite Waste Management's protestations to the contrary, the medical panel's opinion that stabilization would occur on July 17, 2007, *without* surgery is not conclusive proof of

stabilization on that date, especially in light of the medical panel's approval of and deference to Dr. Bean's expertise and his specific recommendation that the tailbone excision surgery be performed. Consequently, we decline to disturb the Board's determination that the excision surgery is necessary and that Hartley will not stabilize until six months after the surgery.

¶10    Waste Management next asserts that the award of temporary disability benefits from February 24, 2007, to October 29, 2007, is improper because Hartley stabilized on July 17, 2007.[4] Temporary disability compensation "provides an employee with income during the time [s]he recuperates from work-related injuries until [her] condition has reached medical stabilization." *Griffith v. Industrial Comm'n*, 754 P.2d 981, 983 (Utah Ct. App. 1988). In light of our holding on the stabilization issue, the compensation award was not unreasonable.

---

[4]Waste Management also challenges the award for anticipated surgical expenses because Hartley has not yet had the excision surgery. Waste Management claims that this is because she has refused the surgery up to this point. Waste Management intimates that Hartley's refusal is a ploy to continue receiving disability benefits while delaying the corrective surgery.

We have previously refused to adopt a rule excusing the payment of disability compensation when circumstances beyond the insurer's control cause a claimant's surgery to be delayed, *see King v. Industrial Comm'n*, 850 P.2d 1281, 1296 (Utah Ct. App. 1993), *superseded by statute on other grounds as recognized by Murray v. Labor Comm'n*, 2012 UT App 33, ¶¶ 17–18, 271 P.3d 192, and we see no reason here to excuse payment when the insurer may very well be the cause of the delay. Waste Management has not pointed to any evidence in the record—likely because there is none—to support its assertions that Hartley is at fault for the surgery not having yet occurred. Plenty of contrary record evidence exists, however. At the hearing, Hartley testified that she wished to have the surgery performed as soon as she obtained approval. In her factual findings, the ALJ noted that Hartley has made continual efforts to have the surgery despite Waste Management's refusal to approve the procedure. Indeed, the evidence suggests that Waste Management, and not Hartley, is to blame for the fact that Hartley has not yet had the surgery, by reason of its continued campaign to have the procedure declared unnecessary.

¶11    Because Hartley has not yet medically stabilized and will not until six months after the excision surgery, the medical panel's theorized July 17, 2007 stabilization date is not controlling in our analysis of whether the compensation award was appropriate. Because of her compromised physical abilities, Hartley was terminated by Davis County on February 24, 2007. She actively looked for work from that point until she was hired by Brigham City as an animal control officer on October 30, 2007, where she has apparently been employed ever since. It appears, therefore, that temporary disability compensation was only awarded during the period in which she was unemployed and actively seeking work. Given that she did not stabilize at any point during that period, it is reasonable and rational to conclude that Hartley was entitled to the compensation awarded. *See* Utah Code Ann. § 34A-2-410 (LexisNexis 2011); *Griffith*, 754 P.2d at 983–84.

¶12    In conclusion, there is substantial evidence in the record to support the Board's finding that the tailbone excision surgery is necessary and that Hartley will not stabilize without it. The Board's award of temporary disability compensation is both reasonable and rational. Accordingly, we decline to disturb the Board's decision.

_____
Gregory K. Orme, Judge

-----

¶13    WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Stephen L. Roth, Judge