**2013 UT App 103**

# THE UTAH COURT OF APPEALS

PARWINDER BHATIA,
*Petitioner,*
*v.*
RETIREMENT BOARD,
LONG-TERM DISABILITY PROGRAM,
*Respondent.*

Opinion
No. 20120096-CA
Filed April 25, 2013

Original Proceeding in this Court

David J. Holdsworth, Attorney for Petitioner
David B. Hansen, Liza J. Eves, and Erin L. Gill,
Attorneys for Respondent

JUDGE CAROLYN B. MCHUGH authored this Opinion, in which
JUDGES JAMES Z. DAVIS and STEPHEN L. ROTH concurred.

McHUGH, Judge:

¶1      Petitioner Parwinder Bhatia petitions for review of the Utah State Retirement Board's (the Board) decision denying his claim for ongoing permanent disability benefits under the Utah Public Employees' Long-Term Disability Act (the Act). *See* Utah Code Ann. §§ 49-21-101 to -406 (LexisNexis 2007 & Supp. 2009).[1] We decline to disturb the Board's ruling.

---

1. Unless otherwise noted, we cite the version of the Utah Code that was in effect in 2009 when Mr. Bhatia filed his claim for long-term disability benefits.

BACKGROUND

¶2    Mr. Bhatia worked for the Utah State Department of Administrative Services as a mail clerk for approximately seven years. In April 2007, Mr. Bhatia was injured when a coworker rolled a chair that struck him in the back. Due to this injury, Mr. Bhatia stopped working in May 2007 and filed for long-term disability benefits. The Long-Term Disability Program (LTD Program) granted Mr. Bhatia a two-year long-term disability benefit because Mr. Bhatia was unable to perform his duties as a mail clerk. When Mr. Bhatia's two-year disability benefit ended in July 2009, he filed for ongoing permanent total disability benefits. The LTD Program denied Mr. Bhatia's request, citing his failure to provide objective medical documentation showing that he was totally or permanently disabled from all gainful employment. The executive director of the Utah Retirement Systems formally denied Mr. Bhatia's application on May 13, 2010. Mr. Bhatia sought review by a Hearing Officer.

¶3    After the hearing, the Hearing Officer instructed each party to draft proposed findings of fact, conclusions of law, and orders. In January 2012, the Hearing Officer adopted the LTD Program's proposed findings of fact, conclusions of law, and order denying Mr. Bhatia's claim because it "more accurately set forth the persuasive and convincing evidence elicited at the hearing . . . ." On review, the Board adopted the Hearing Officer's decision as the order of the Board and denied Mr. Bhatia's claim for ongoing total disability benefits.[2] Mr. Bhatia timely petitioned for judicial review.

---

2. Mr. Bhatia was eligible for and received Social Security Disability Insurance (SSDI) benefits from November 2007 until January 2012. When he first accepted those benefits, Mr. Bhatia signed an agreement acknowledging that he understood that if he, his spouse, or dependent children were awarded SSDI benefits, his monthly LTD Program benefit would be offset and he would be

(continued...)

ISSUES AND STANDARDS OF REVIEW

¶4     Mr. Bhatia first argues that the Board's finding that he failed to demonstrate total disability is not supported by substantial evidence. When reviewing an agency's decision, "this court may grant relief if 'it determines that a person seeking judicial review has been substantially prejudiced by . . . a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court.'" *Bailey v. Retirement Bd.*, 2012 UT App 365, ¶ 2, 294 P.3d 577 (mem.) (quoting Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2011)). "A finding is supported by substantial evidence when a reasonable mind might accept as adequate the evidence supporting the decision." *Id.* (citation and internal quotation marks omitted).

¶5     Next, Mr. Bhatia contends that the Board misinterpreted and misapplied the Act in concluding that he did not show total disability. "[W]e review the Board's application or interpretation of a statute as a question of law under the correction-of-error standard." *McLeod v. Retirement Bd.*, 2011 UT App 190, ¶ 9, 257 P.3d 1090 (alteration in original) (citation and internal quotation marks omitted); *see also* Utah Code Ann. § 63G-4-403(4)(d) (explaining that this court may grant relief if an agency has "erroneously interpreted or applied the law").

---

2. (...continued)
required to repay the LTD Program in a lump sum from the award of retroactive SSDI benefits. Because Mr. Bhatia and his dependent received SSDI benefits during the same period of time he received benefits from the LTD Program and that amount was not offset, the Board also ordered Mr. Bhatia to pay the LTD Program for the overpayment plus interest. *See* Utah Code Ann. § 49-21-402(2) (LexisNexis 2007). Mr. Bhatia has not petitioned for review of that aspect of the Board's order.

ANALYSIS

I. Substantial Evidence

¶6     The Act provides disability benefits to "eligible employee[s]" who have a "total disability." *See* Utah Code Ann. § 49-21-401(4) (LexisNexis Supp. 2009). During the first two years of disability benefits, "'[t]otal disability' . . . means the complete inability, due to objective medical impairment, whether physical or mental, to engage in the eligible employee's regular occupation . . . ." *Id.* § 49-21-102(11)(a) (LexisNexis 2007). We recently explained in *Bailey v. Retirement Board*, 2012 UT App 365, 294 P.3d 577 (mem.), that the definition of total disability narrows in two ways after the first twenty-four months of disability benefits. *Id.* ¶ 3. First, the Act defines "total disability" as "the complete inability . . . to engage in any gainful occupation which is reasonable, considering the eligible employee's education, training, and experience."[3] Utah Code Ann. § 49-21-102(11)(b). Second, total disability is determined "based solely on physical objective medical impairment." *Id.* "Objective medical impairment" is defined to mean "an impairment resulting from an injury or illness which is diagnosed by a physician and which is based on accepted objective medical tests or findings rather than subjective complaints." *Id.* § 49-21-102(6). Interpreting these provisions, we have explained that after the first twenty-four month period, a state employee has a total disability "only if [the employee] is (1) completely unable to engage in any reasonable gainful occupation (2) based solely on physical impairment (3) diagnosed from objective medical tests or findings and not

---

3. The Utah Legislature has since changed this definition of "total disability." The current version of section 49-21-102(11)(b) explains that total disability after the first twenty-four months of benefits is determined "based solely on physical objective medical impairment, and . . . regardless of the existence or absence of any mental impairment." Utah Code Ann. § 49-21-102(11)(b)(ii) (LexisNexis Supp. 2012).

subjective complaints." *Bailey*, 2012 UT App 365, ¶ 4. The employee bears the burden of proving that he has a disability that qualifies under the Act. *See* Utah Code Ann. § 49-11-613(4) (LexisNexis Supp. 2009) ("The moving party in any proceeding brought under this section shall bear the burden of proof."); *Bailey*, 2012 UT App 365, ¶ 4.

¶7     In this case, the Board found that Mr. Bhatia had not met his burden of proving he is entitled to long-term disability payments. Mr. Bhatia asserts that the Board's findings of fact are not supported by substantial evidence. Specifically, Mr. Bhatia contests the Hearing Officer's reliance on (1) the testimony of the LTD Program's medical advisor, Dr. Matthew Rondina, (2) the functional capacity evaluation (FCE) and testimony of a physical therapist, Dell Felix, and (3) the testimony of a licensed vocational counselor, Byron Hall. In assessing Mr. Bhatia's claim that the findings are not supported by substantial evidence, we review the record as a whole, bearing in mind that "'[i]t is the province of the [administrative board], not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the [b]oard to draw the inferences.'" *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 16, 157 P.3d 334 (quoting *Grace Drilling Co. v. Board of Review of the Indus. Comm'n*, 776 P.2d 63, 68 (Utah Ct. App. 1989)).

¶8     The Board found that Dr. Rondina's conclusion "as to whether Mr. Bhatia met the definition of total disability . . . is persuasive that there is insufficient evidence to support Mr. Bhatia's claim that he is totally disabled given his objective medical impairments." Mr. Bhatia argues that the Board erred in relying on this opinion because Dr. Rondina did not examine or interview him, did not consult with his treating physicians, and considered only his degenerative disc disease, thereby ignoring the impact of his other medical conditions. In addition, Mr. Bhatia asserts that Dr. Rondina did not understand or apply the correct standard for determining whether the "eligibility criteria" for continued long-term disability benefits had been met.

¶9     Contrary to Mr. Bhatia's contentions, the Board properly considered Dr. Rondina's opinion. Dr. Rondina reported that his opinion was based on a full and thorough review of Mr. Bhatia's medical records. Dr. Rondina further explained that he has worked as an independent contractor for the LTD Program for the last five or six years and that he is familiar with the statutory standard for granting long-term disability benefits. Despite the fact that Dr. Rondina recommends granting disability benefits in more than seventy-five percent of the approximately twenty-five cases he reviews each month, he concluded that Mr. Bhatia did not satisfy the statutory standard. According to Dr. Rondina, "[t]he most recent records would suggest [Mr. Bhatia] is capable of at least light work" and the records "do not provide sufficient objective evidence of disability from all gainful occupations." Despite Mr. Bhatia's argument to the contrary, Dr. Rondina also testified that he considered Mr. Bhatia's degenerative disc disease, as well as his other medical history and conditions. Although Dr. Rondina acknowledged that he did not personally interview or examine Mr. Bhatia, Mr. Bhatia has pointed us to no authority for the proposition that the Board cannot rely on an opinion based solely on a review of the medical records. Furthermore, the Board determined that the "objective medical documentation does not support a finding of total physical disability," noting that Dr. Rondina's opinion was consistent with reports from other medical providers. For example, two of Mr. Bhatia's treating physicians released Mr. Bhatia to light duty work.

¶10    Mr. Bhatia also challenges the Board's reliance on Mr. Felix's testimony regarding his "functional capacity" on the ground that it is based on a flawed methodology. Based on the FCE, Mr. Felix opined that Mr. Bhatia qualified for the "light-medium physical demand characteristic" work category. Mr. Bhatia claims that the Board should have followed the Social Security Administration's (SSA) Administrative Law Judge's (ALJ) rejection of Mr. Felix's evaluation as unreliable.

¶11 Mr. Felix, a physical therapist with thirty-five years of experience, testified that he reached his conclusion that Mr. Bhatia qualified for light-medium physical demand characteristic work after he tested Mr. Bhatia for three to four hours. Mr. Felix's FCE included an intake interview to establish Mr. Bhatia's medical history and background, a physical examination, and a series of tests. The evaluation assessed Mr. Bhatia's strength, dexterity, and tolerance for different activities, including walking, sitting, and standing. Mr. Felix testified that, among other things, Mr. Bhatia could sit and stand for up to sixty minutes and therefore had the ability to do a light, sedentary job. Indeed, Mr. Bhatia's interview responses concerning his own abilities were consistent with Mr. Felix's conclusions.

¶12 Despite Mr. Bhatia's contrary position, the Board was not bound by the SSA's assessment of Mr. Felix's opinion. Unlike in the SSA proceedings, Mr. Felix actually testified before the Hearing Officer. Thus, the Board had the benefit of Mr. Felix's explanation of his opinion and his response to the concerns raised in the SSA proceedings. Additionally, Mr. Bhatia's own testimony describing his capabilities was consistent with Mr. Felix's conclusions and the opinion of Mr. Bhatia's treating physicians. For example, Dr. Jeff Chung's contemporaneous medical notes indicate, "I believe there is reasonably definitive proof that Mr. Bhatia as of 6-29-07 had the capability of performing light-duty work." Due to the Hearing Officer's advantaged position, we defer to his assessment of the weight to give Mr. Felix's testimony. *Cf. Pender v. Department of Workforce Servs.*, 2011 UT App 79, ¶ 3, 250 P.3d 1014 (per curiam) ("This court will defer to the factual findings of the ALJ when there is conflicting evidence as the ALJ is in the best position to judge the credibility of witnesses.").

¶13 Next, Mr. Bhatia challenges the Board's reliance on Mr. Hall's testimony. After explaining his qualifications as a vocational counselor, Mr. Hall testified that Mr. Bhatia could perform all the physical requirements of several job titles. Mr. Bhatia argues that Mr. Hall located isolated jobs which required skills that Mr. Bhatia

did not possess, including fluency in English and proficiency with computers, and that he failed to analyze whether Mr. Bhatia realistically could be hired for and retain those positions.

¶14　The record reflects that Mr. Hall took into account Mr. Bhatia's experience, skills, and physical limitations, and assumed that Mr. Bhatia would need accommodations of no lifting or carrying above ten pounds, the ability to alternate between sitting, standing, and walking, and no twisting or bending. Nevertheless, Mr. Hall's employability report identified nine potential positions for Mr. Bhatia with details on each job's requirements, physical demands, salary, and openings. Although Mr. Bhatia was free to point out any deficiencies in Mr. Hall's report, the Board could give it as much weight as it deemed appropriate. *See Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997) ("We give deference to the initial decision maker on questions of fact because it stands in a superior position from which to evaluate and weigh the evidence and assess the credibility and accuracy of the witnesses' recollections."). Moreover, the Board's findings were also based on testimony from Mr. Bhatia that was consistent with Mr. Hall's conclusions. For example, Mr. Bhatia testified that he speaks and mostly understands English and that he had worked for computer companies testing the quality of computers.

¶15　Additionally, Mr. Bhatia contends that the Board erred by giving too much weight to the opinions of the LTD Program's experts and by not giving enough weight to the opinions of his treating physicians. In support, he urges this court to adopt the treating physician rule employed by the SSA in evaluating disability claims. The SSA "will generally 'give more weight to opinions from . . . treating sources' and 'will always give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's opinion.'" *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003) (omission in original) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2002)).

¶16    After briefing was completed in this case, we rejected a similar argument in *Bailey v. Retirement Board*, 2012 UT App 365, 294 P.3d 577 (mem.). There, we observed that "unlike the Commissioner of the [SSA], the Utah State Retirement Board has not adopted regulations approving and formalizing use of the rule in the [agency's] disability program." *Id.* ¶ 12 (second alteration in original) (citation and internal quotation marks omitted). We further indicated that the rule "has not attracted universal adherence outside the Social Security context." *Id.* (citation and internal quotation marks omitted). Finally, we reasoned that embracing the rule would be inconsistent with "our own supreme court['s rejection of] a version of the rule in the workers' compensation context . . . ." *Id.* (citing *Rushton v. Gelco Express*, 732 P.2d 109, 111 (Utah 1986)).

¶17    In sum, Mr. Bhatia has not demonstrated "'that despite the supporting facts, . . . the findings are not supported by substantial evidence.'" *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 15, 157 P.3d 334 (omission in original) (quoting *Grace Drilling Co. v. Board of Review of the Indus. Comm'n*, 776 P.2d 63, 68 (Utah Ct. App. 1989)). And because "[i]t is the province of the [administrative board], not appellate courts, to resolve conflicting evidence," *see id.* ¶ 16 (citation and internal quotation marks omitted), the Board did not err when it weighed the conflicting evidence in favor of the LTD Program's experts. Accordingly, we conclude that the Board's finding that Mr. Bhatia is not totally disabled and "is able to perform gainful employment" is supported by substantial evidence.[4]

---

4. Mr. Bhatia also argues that the Board's and the Hearing Officer's findings of fact are inadequate because the Hearing Officer did not articulate why he found the other experts more persuasive. However, the Hearing Officer supported his ultimate finding that Mr. Bhatia "is able to perform gainful employment" with several subsidiary findings, including that Dr. Rondina's medical opinion

(continued...)

## II. Total Disability Under the Act

¶18    Mr. Bhatia makes two statutory arguments asserting that the Board misinterpreted the Act. First, Mr. Bhatia contends that the Act does not require him to prove "total disability" by objective medical evidence; rather, he argues that he was required to prove only the fact of "impairment" by objective medical evidence. According to Mr. Bhatia, the Board could consider his subjective reports and complaints in determining "total disability." As with any statutory interpretation, we begin by analyzing the plain language because "[t]he best evidence of the legislature's intent is the plain language of the statute itself." *Summit Operating, LLC v. Utah State Tax Comm'n*, 2012 UT 91, ¶ 11, 293 P.3d 369 (alteration in original) (citation and internal quotation marks omitted).

¶19    The Act provides, "If the office determines that the eligible employee is totally disabled . . . , the eligible employee shall receive a monthly disability benefit . . . for each month the total disability continues . . . ." Utah Code Ann. § 49-21-401(4) (LexisNexis Supp. 2009). "Total disability" after the first twenty-four months of benefits is then defined as "the complete inability, based solely on physical objective medical impairment, to engage in any gainful occupation which is reasonable, considering the eligible employee's education, training, and experience." *Id.* § 49-21-102(11)(b) (LexisNexis 2007). The Act plainly explains that an employee is totally disabled when he has the "complete inability" to work, and

---

4. (...continued)

and Mr. Felix's functional capacity conclusions were persuasive. In addition, the Hearing Officer identified the objective medical documentation and Mr. Bhatia's testimony regarding his education, training, and experience as support for his findings. The basis for the Board's decision is therefore apparent, and the findings provide adequate detail to allow us to review the sufficiency of the evidence supporting those findings. *See Bailey v. Retirement Bd.*, 2012 UT App 365, ¶¶ 14–16, 294 P.3d 577 (mem.).

that "complete inability" is determined by evidence of "physical objective medical impairment."

¶20    Contrary to Mr. Bhatia's argument, the statute requires the claimant to demonstrate his complete inability to work by proving "physical objective medical impairment." *See id.* § 49-21-102(11)(b). In turn, section 49-21-102(6) limits "objective medical impairment" to impairment "based on accepted objective medical tests or findings rather than subjective complaints." *Id.* § 49-21-102(6). Thus, the plain language of the statute provides LTD Program benefits only where objective medical tests or findings establish that the claimant is completely unable to engage in any gainful employment. *See Hilton v. State Retirement Bd.*, 2005 UT App 408U, para. 2 (mem.) ("Not every impairment or disability qualifies a state employee for benefits under the Act . . . ."). Accordingly, the Board did not misinterpret the Act's definition of "total disability" when it denied Mr. Bhatia's claim for ongoing permanent disability benefits.

¶21    Second, Mr. Bhatia argues that the Act does not require him to show that he cannot work at all. Instead, he argues that the statute requires him to show only that "he cannot perform the type of work that is *suitable* for him." According to Mr. Bhatia, suitability is measured by the likelihood that he will be hired and can succeed in an occupation, considering his age, education, training, experience, and other vocational factors.

¶22    Again the plain language of the Act belies Mr. Bhatia's argument. It instructs the Board to determine whether an employee is unable "to engage in any gainful occupation which is *reasonable*, considering the eligible employee's *education, training, and experience*." *See* Utah Code Ann. § 49-21-102(11)(b) (emphasis added). Nothing in this statute requires the Board to speculate as to whether an employer would actually hire Mr. Bhatia or the likelihood that he would be retained in the position. The Board properly considered Mr. Hall's testimony that "based on Mr. Bhatia's education, work experience, transferable skills, physical

and residual limitations . . . [, and] his current age of 51, [Mr. Bhatia] could perform all the physical requirements of" the jobs reviewed in Mr. Hall's report. It also relied on Mr. Bhatia's testimony that he had been continuously employed from 1992 to 2007, that he had held numerous job titles based on his educational background, that he has developed specialized skills due to the various jobs, and that he is able to understand and speak English. We conclude that the Board properly interpreted the statute when it reached its conclusion that Mr. Bhatia "is able to perform gainful employment."

CONCLUSION

¶23    Mr. Bhatia has failed to demonstrate that the Board's finding that he was not totally disabled was unsupported by substantial evidence. The Board did not err in interpreting or applying the Act. We therefore decline to disturb the Board's decision.

—————